Durham Municipal Court,
No. 5120.

STATE *v.* ALAN ERIC PINSINCE *& a.*

Submitted June 5, 1963.
Decided July 9, 1963.

*William Maynard,* Attorney General and *William J. O'Neil,* Assistant Attorney General, for the State.

*Alfred J. Catalfo, Jr.* for the respondents.

DUNCAN, J. On April 28, 1961 a state-wide civil defense alert was conducted in New Hampshire and elsewhere, in cooperation with the United States Office of Civil Defense. Advance notice of the alert had been given and on the day of the alert a protest demonstration in Durham on the part of some fourteen or more students resulted in their arrest.

The respondents were students and a former student at the State University. At the trial all three conceded their refusal to comply with the request that they take shelter during the alert. They testified, in part, that such refusal was in protest against the alert as "unrealistic," or to "gain publicity for a rather evil situation," or a "bad law." All three placed reliance on their rights under the First and Fourteenth Amendments to the Constitution of the United States, and various provisions of the Constitution of New Hampshire.

It appears not to be questioned that the Directive which the respondents are charged with violating provided in part: "Upon receipt of warning Red, sound the take cover signal, (1) Stop all traffic except emergency vehicles . . . (2) Clear streets and sidewalks. Have pedestrians take the nearest shelter." The Civil Defense Act provides for the arrest of any person violating any order, rule or regulation made pursuant to the Act "which affect[s] the public generally" (RSA 107:19 (supp)), and a penalty for such violation. RSA 107:22 (supp).

The motion to quash filed on behalf of the three respondents attacked the Civil Defense Act (RSA ch. 107) upon numerous constitutional grounds, as does the brief filed in this court in support of the exceptions.

In summary it is contended that the conduct of officials pursuant to the statute was an invasion of the rights of free speech guaranteed the respondents by the First Amendment to the United States Constitution, and of their rights of peaceable assembly guaranteed by that Amendment and by Article 32d, Part I, of the New Hampshire Constitution, because at a time when no emergency existed they were prevented from peaceably assembling on a public street without impeding traffic; that they were denied the equal protection of the law as guaranteed by both Constitutions, because other persons likewise in violation of the Directive were not arrested or prosecuted; that the statute and Directive are too vague to be enforceable, because failing

to describe with sufficient certainty the crime or offense created; and that the statute is an unconstitutional delegation of legislative authority to the Governor.

We find no merit in these contentions. We do not consider that the word "shelter" as used by the Directive is so vague or ambiguous that "men of common intelligence must necessarily guess at its meaning." *Connally* v. *Gen'l Const. Co.*, 269 U. S. 385, 391. We think that the requirement which the respondents were called upon to comply with was both understandable and understood, and that no uncertainties rendered it unenforceable. *State* v. *Chaplinsky*, 91 N. H. 310, 320-321.

In view of the detailed provisions of the statute delineating the authority delegated to the Governor, we cannot hold that the statutory provisions called into play in these cases constitute an unlawful delegation of legislative power. *Conway* v. *Water Resources Board*, 89 N. H. 346, 351-353; *State* v. *Langley*, 92 N. H. 136. See *Opinion of the Justices*, 96 N. H. 517, 524.

No more do we consider that the order to take shelter was a violation of the respondents' constitutional rights of free speech and peaceable assembly under either state or Federal Constitution. It is obvious from a reading of the Civil Defense Act that it is designed not merely to insure protection against injury to individual pedestrians who are required to take shelter, but more essentially to insure the protection and welfare of the general public through the establishment of orderly procedures to be followed in the event of emergency or disaster.

In *State* v. *Drew*, 89 N. H. 54, the defendant sought to justify his refusal to submit his son to vaccination upon the basis of rights of conscience and religious freedom guaranteed by Articles 4 and 5 of Part I of the New Hampshire Constitution. In holding that this justification was not available, this court pointed out: "The defendant cannot claim constitutional rights under Articles 4 and 5 of the Bill of Rights without making concessions of some of his natural rights under Article 3." Article 3d states: "When men enter into a state of society, they surrender up some of their natural rights to that society, in order to insure the protection of others." Const., Pt. I, *Art.* 3d. Similarly in these cases, the rights of the respondents under Article 32d of the Bill of Rights are conditioned upon "concessions of some of [their] natural rights under Article 3." *State* v. *Drew, supra*, 58.

The respondents object that no emergency existed at the time of

the alert; but regulations issued in exercise of the police power clearly do not depend for their validity upon the existence of an emergency. Vaccination, or fire escapes (RSA ch. 155), or a fire drill in a school, may be required as a preventive measure before any emergency arises. *State* v. *Drew, supra; Jacobson* v. *Massachusetts*, 197 U. S. 11; *Zucht* v. *King*, 260 U. S. 174; *Dederick* v. *Smith*, 88 N. H. 63. See *Cumberland Farms Northern, Inc.* v. *Pierce*, 104 N. H. 489. As was said in *People* v. *Peck*, 7 N. Y. 2d 76, 80, *app. dism.* 364 U. S. 662, in affirming convictions of offenses similar to those charged here: "This was merely training in how to take shelter in the event of an air raid, in the nature of a lifeboat drill at sea or a fire drill in a school."

There was no unconstitutional invasion of the respondents' rights of free speech and peaceable assembly under the Federal Constitution. "The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction." *Poulos* v. *New Hampshire*, 345 U. S. 395, 405. See also, *Cox* v. *New Hampshire*, 312 U. S. 569; *Chaplinsky* v. *New Hampshire*, 315 U. S. 568. The views hereinbefore expressed are supported by the opinion in parallel cases in New Jersey which arose out of a similar alert upon the same day. *State* v. *Congdon*, 76 N. J. Super. 493.

The respondents' claim that they were deprived of equal protection of the laws because other persons on the Main Street were not arrested at the same time is not sustainable. The record falls short of establishing that others subject to the Directive failed to comply. See RSA 107:12, 19 (supp). Moreover even if other violators escaped prosecution, it will not be assumed that this resulted from intentional and purposeful discrimination in enforcement of the law, since such discrimination will not be presumed.

We have examined the arguments advanced for the respondents which cite other constitutional provisions relied upon. They do not require discussion in this opinion. We find no error in the municipal court's denial of the motion to quash.

*Remanded.*

All concurred.