Hillsborough
No. 7429

STATE OF NEW HAMPSHIRE v. CHARLES FLOYD, JR.

October 29, 1976

*David H. Souter,* attorney general, and *Edward A. Haffer,* assistant attorney general, by brief, for the State.

Charles Floyd, Jr., by brief, pro se.

PER CURIAM.   The defendant was convicted by a jury on June 25, 1976, of violations of RSA 635:1, Burglary, and RSA 637:3, Theft.

His numerous exceptions center about the use of evidence seized from a Ryder Rental truck, the denial of his motions for a mistrial and to set aside the verdict.

It appears that during the nighttime of March 6-7, 1974, a substantial number of twenty-foot length copper pipes were stolen from F. W. Webb Company, located in Merrimack, New Hampshire.

Between 8:00 and 8:30 p.m. of the 6th, Officer Trask of the Merrimack Police Department saw a Ryder Rental truck parked off the shoulder of Route 3 in front of a closed drive-in theater. This was about half a mile from the Webb properties. Thinking the truck might be disabled, he stopped to check it. There was nothing in it except an empty green five-gallon plastic gas can of rather peculiar design, apparently new, with a tag on it. He then noted the truck number plate, the body size (a capacity of 22 feet — box type) and Ryder Rental numbers. He checked the Webb Company buildings and at that time they were secure. He went off duty about 11 p.m.

About 2 o'clock in the morning of March 7, Merrimack Police Officer Hudson, making a routine check, observed that the chain barring entrance to the parking area of the Webb properties was down. He then discovered that the padlock which secured the chain had been cut and was on the ground. The overhead door which gave entrance to the building had been damaged and glass was broken. Other officers were summoned and the examination disclosed litter and breakage inside the building. In the area where the copper pipes had been, they found an empty green five-gallon plastic gas can of odd design which appeared to be new and had a tag on it. The officers learned of the Ryder Rental truck parked in front of the drive-in on the evening of the 6th, which had been observed by Officer Trask, and about 4 or 5 a.m. sent out radio and teletype communications to several States, including Massachusetts, to stop and hold this truck, as it was wanted in connection with a burglary in Merrimack, New Hampshire.

The next morning, March 7, between 10 and 11 o'clock, Officer Trask, on visiting the police station, saw what appeared to be the same gas can which he had observed in the truck. He then learned about the burglary. Later, based upon the teletype and radio information, the Boston police found the truck at approximately 12:45 on the morning of the 8th, parked almost directly across the street from the defendant's home on 50 Columbia Road in Dorchester, Massachusetts. They towed it to the police station of District 3 and located the lessor, a Mr. Kreuse, and got his permission to search the truck. In the meantime they had discovered that he had rented the truck to the defendant at about 5 p.m. on March 6 for 24 hours only and that at the time they took the truck it was controlled by Kreuse, since the lease to the defen-

dant had expired at 5 p.m. on March 7. Their search revealed gloves, wood chips, paint chips and copper particles. All these, together with comparisons of damage indentations on the truck and damage to the Webb building, matched up. The paint chips, of a rather odd color, were the same type and color as particles taken from the fork lift in the Webb building. Also, actual paint particles taken from the gloves themselves were similar to the particles taken from the fork lift.

Shortly before noon of March 8, Boston detectives, acting on information from the New Hampshire police that the defendant, Charles Floyd, Jr., was wanted in connection with a New Hampshire burglary, arrested the defendant and two companions on Morton Street in a Buick Electra a few miles from the defendant's home. They took the three to the police station, the defendant was given a Miranda warning, signed a rights card, and then talked voluntarily to an officer. He made conflicting statements as to his whereabouts the night of March 6-7. In an account of his actions he never mentioned a trip to a furniture store with his wife, which she testified that he made with her on the evening of March 6 and which he said he must have forgotten, although it had occurred only two days before his statement to the police.

The defendant's contention that the warrantless search of the Ryder truck was unconstitutional under the fourth amendment and that the fruits of the search were inadmissible, cannot be sustained. It is not every such search and seizure, but only unreasonable searches and seizures which are prohibited by the fourth amendment. *See South Dakota v. Opperman,* 96 S. Ct. 3092 (1976). As pointed out in that case, fourth amendment standards are less rigid when applied to motor vehicles than to homes and offices, as the expectation of privacy is less. In addition to these principles, the police here had probable cause to believe that the truck contained evidence of a crime. Reasonable and prudent persons in their position, possessing their knowledge, would assuredly believe that evidence could be found indicating that a crime had been committed. *State v. Thorp,* 116 N.H. 303, 358 A.2d 655 (1976).

Furthermore, the defendant's control of the vehicle had expired about 5 p.m. on March 7, according to the rental slip which was introduced in evidence. The search and seizure took place on March 8. As previously stated, no search was made until the owner had given the police permission to do so.

The authorities cited by the defendant are inapposite, since they depend upon determinative facts different from those which existed here. Therefore, the defendant takes nothing by his exceptions to search and seizure and the introduction of evidence found in the truck. *South Dakota v. Opperman,* 96 S. Ct. 3092 (1976); *State v. Thorp,* 116 N.H. 303, 358 A.2d 655 (1976).

No exceptions were taken at the trial to the arrest of the defendant, and it is elementary that this issue is not before us now. *State v. Ketchen,* 80 N.H. 112, 114 A. 20 (1921); *Fitch Company v. Insurance Company,* 99 N.H. 1, 104 A.2d 511 (1954); *United States F. & G. Co. v. Kancer,* 108 N.H. 450, 238 A.2d 5 (1968).

His motion for a mistrial rests upon the testimony by the Boston officers that when they took Floyd, two other men were with him. This was merely a circumstance describing the situation when the defendant was arrested. No evidence of anything said or done by the men was introduced, and evidence of their mere presence seems to us to have been proper as a circumstance of the arrest and not to have been prejudicial. However, the court's twice-given instructions to the jury to disregard evidence as to the presence of these two men were presumably followed. In any event, we believe nothing exists which indicates that justice might not be done if the trial continued to a verdict. The defendant's exception to the denial of his motion for a mistrial is overruled. *State v. Booton,* 114 N.H. 750, 757, 329 A.2d 376, 382 (1974).

The defendant's assertion that Detective Davis of the Boston police force never identified Floyd as the one who made certain statements is incorrect. Not only does the transcript show that Davis did identify Floyd as the one who made the statements, but in addition to this, the evidence came in without exception by the defendant.

Floyd's final argument that the Trial Court (*Perkins,* J.) should have granted his motion to set aside the verdict because the evidence was not sufficient to establish his guilt beyond a reasonable doubt does not require extended consideration. Viewed, as it must be, in the light most favorable to the State, the circumstantial evidence appears ample to sustain the convictions. *State v. Lovett, Jr.,* 116 N.H. 571, 364 A.2d 880 (1976). The presence of the easily distinguishable gas can in the area where the pipes had been, the gloves, wood and paint chips, metal particles, match-up of damage on the Webb building and the Ryder truck, and the defendant's inconsistent accounts of his activities on the night of March 6-7, are fully sufficient to warrant the guilty verdict. The

denial of the motion to set aside was proper. *State v. Inselburg,* 114 N.H. 824,. 330 A.2d 457 (1974).

The order is

*Exceptions overruled.*

GRIMES & BOIS, JJ., did not sit; the others concurred.