THE STATE OF NEW HAMPSHIRE

v̇.

DANIEL M. MACLEOD

· June 20, 1979

*Thomas D. Rath*, attorney general (*David L. Harrigan*, attorney, orally), for the State.

*Geiger & Geiger*, of Penacook (*Glenn G. Geiger, Jr.*, orally), for the defendant.

GRIMES, J.   The issues in this theft case are whether the trial court erred in denying defendant's motion for a "directed verdict" made at the close of the State's evidence, and whether the court abused its discretion in not granting defendant a continuance to obtain a witness. We uphold the trial court.

Defendant was indicted for theft of a motorcycle belonging to Richard Stimson. RSA 637:3. He was tried before the court without a jury and found guilty.

At the close of the State's case, defendant called to the witness stand one Stillman Titus, who claimed the privilege against self-incrimination and refused to testify. Defendant then moved for a continuance to allow him to obtain the testimony of one Marc Levesque, who was then thought to be in federal prison in Lewisburg, Pennsylvania. Defendant claimed ignorance until the day of trial of the fact that Titus was under indictment for the same crime and thus would be likely to claim his privilege against self-incrimination. The

court denied the continuance and defendant excepted. The court also refused over objection and exception to grant a directed verdict at defendant's request. Defendant's exceptions were transferred by *Cann*, J.

On the question of the sufficiency of the evidence to support the trial court's denial of defendant's motion for a directed verdict, the evidence construed most favorably to the State, *State v. Scione*, 118 N.H. 922, 395 A.2d 1252 (1978), would support the following findings of fact.

Richard Stimson, who lived with his parents in North Stratford, New Hampshire, was the owner of a 1976 Honda "750" motorcycle which he had purchased in April 1977 for $2,300. On the evening of September 15, 1978, he left it parked in the front yard of his home in an undamaged condition. When his father, Burt Stimson, arose the next morning, he noticed that the bike was missing. The police were notified and Richard and his father set out in search of the missing motorcycle. They found and followed tire tracks to an old dump, where they found the bike lying in the bushes. They left it where it was and reported their find to the police. At the suggestion of a State police trooper, Richard left the bike where it was and went to a nearby hill to "stake out" the area so that the thieves could be apprehended should they return for the bike. The trooper left to get some equipment and was to return to put ultraviolet powder on the bike so that anyone who handled it could be detected.

Richard had been observing from the hill for about a half hour, when he noticed a brown truck with sideboards drive past the motorcycle and then out of sight. Immediately thereafter, two men approached the motorcycle from the direction of the truck. The men walked to where the bike was and one of them, the defendant, put on a pair of white gloves. The brown truck reappeared and then was parked just below Richard's lookout position. He could hear "metal noises" coming from the vicinity of the bike. He left and ran to his uncle's house, which was nearby. After Richard called his father, he, his uncle, and his father returned to the scene armed with a rifle and shotgun. They parked their vehicle so as to block the brown truck and ordered the driver, Stillman Titus, out of the truck. Richard started toward the bike and heard two men running through the woods. He followed and found defendant and Marc Levesque hiding in the brush. The police later arrived and took the suspects into custody. After arrest, defendant gave a false name and refused to sign his fingerprint card.

An examination of the motorcycle revealed that it had been moved and that the ignition switch and seat lock had been broken. A slide hammer, so-called, was found in an unrusted condition in the same area. This tool is used to hook onto something with one end and hammer outward by means of a heavy sliding cylinder which pounds against a rim on the opposite end. Such a device is commonly used by auto thieves to break the locking devices on steering columns. An imprint of a shoe was found in the earth near the bike, but it did not match the shoes worn by the defendant.

■ A person is guilty of theft under RSA 637:3 I if he "obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." The fact that defendant and his companion walked directly to the hidden bike indicated that they knew it was there and that it was the object of their coming to the old dump. The fact that the defendant put on gloves indicated that he intended to engage in some kind of activity and desired to protect his hands or to prevent leaving fingerprints. The metal noises would support a finding that the bike was being worked on in some manner. Its condition thereafter is evidence that defendant and his companions were attempting to release the lock so that the bike could be driven away and that their intent was to deprive the owner of it for good. We hold that the evidence supported a finding of guilt, *see State v. Floyd*, 116 N.H. 632, 365 A.2d 738 (1976), and that there was no error in the denial of defendant's motion for a directed verdict. *State v. Dupuy*, 118 N.H. 848, 395 A.2d 851 (1978); *State v. Breest*, 116 N.H. 734, 367 A.2d 1320 (1976).

The motion for a continuance was made after defendant attempted to produce Titus, who then claimed the privilege against self-incrimination. Defendant argues that because the testimony of Titus would duplicate that of Levesque, he relied on Titus and made no effort before trial to obtain Levesque as a witness. He claims that he was surprised on the day of trial to find that Titus was under indictment and would not testify and that, therefore, he should be given the opportunity to obtain the testimony of Levesque.

■ It was learned after trial that Levesque was in Concord, New Hampshire, and not in Lewisburg, Pennsylvania. Nevertheless, in reviewing the court's ruling, we must consider the facts as they were presented to the court at the time of the ruling. The court's finding that defendant had ample opportunity to learn of the indictment against Titus and to have the necessary witnesses present is supported by the

record. Moreover, we note that at no time did defendant make an offer of proof as to what Levesque's testimony would be or how it would aid him. Under the circumstances, we cannot say that the court abused its discretion. *State v. Linsky*, 117 N.H. 866, 379 A.2d 813 (1977).

*Exceptions overruled.*

All concurred.