Merrimack
No. 80-347

# THE STATE OF NEW HAMPSHIRE

## v.

# BRIAN LaCLAIR

August 10, 1981

*Gregory H. Smith*, attorney general (*Brian T. Tucker*, attorney, on the brief and orally), for the State.

*Bjorn R. Lange*, Merrimack County Public Defender, by brief and orally, for the defendant.

KING, C.J. The defendant appeals his conviction for aggravated felonious sexual assault. RSA 632-A:2 (Supp. 1979). He contends that the trial court improperly denied him the opportunity to cross-examine the prosecutrix concerning inconsistent statements she had made concerning whether she was a virgin at the time of the alleged rape. He also argues that the rape shield law, RSA 632-A:6 (Supp. 1979), unconstitutionally impaired his ability to rebut certain medical evidence presented against him. Finally, he contends that the trial court impermissibly allowed the prosecutrix's mother to testify to out-of-court statements of the prosecutrix. We reverse the defendant's conviction and remand for retrial.

In cross-examining the prosecutrix, the defendant began to question her about a statement that she had made to the investigating officer that she was a virgin prior to the alleged rape. The State objected to the question, and counsel approached the bench. The State argued that the question involved the prior sexual activity of

the prosecutrix and was therefore improper. The defendant argued that he needed to question the witness about the statement in order to impeach her credibility and that RSA 632-A:6 (Supp. 1979) was unconstitutional to the extent that it prevented him from doing so. The Trial Court (*Cann*, J.) rejected the defendant's contention and ruled that RSA 632-A:6 (Supp. 1979) absolutely prohibits evidence of sexual activity between the prosecutrix and any person other than the alleged actor.

In *State v. Howard*, 121 N.H. 53, 426 A.2d 457 (1981), this court recently considered the constitutionality of the rape shield law. In that case, we stated that a criminal defendant has a fundamental right under the State and federal constitutions to meet the proof against him and to cross-examine witnesses to impeach their testimony. *Id.* at 58, 426 A.2d at 460; *see Davis v. Alaska*, 415 U.S. 308, 315-16 (1974); U.S. CONST. amend. VI; N.H. CONST. pt. 1, art. 15. We also observed that the legislative intent behind RSA 632-A:6 (Supp. 1979) was to spare the rape victim testifying at trial from unnecessary embarrassment, prejudice, and harassment, and that the courts do have the obligation to protect the rape victim from improper questions. *State v. Howard, supra* at 57, 426 A.2d at 459-60. Accordingly, we concluded that despite the literal language of the statute, the " . . . defendant . . . must, upon motion, be given an opportunity to demonstrate that due process requires the admission of . . . evidence [concerning the past sexual activities of the prosecutrix] because the probative value . . . [of the evidence] outweighs its prejudicial effect on the prosecutrix." *Id.* at 58-59, 426 A.2d at 461. The effect of *State v. Howard* is to make evidence of a prosecutrix's prior sexual activity with persons other than the defendant admissible when the trial court, in the exercise of its discretion, determines that due process so requires.

The defendant in this case explained fully to the court his purpose in questioning the prosecutrix. He also made an offer of proof which indicated that the prosecutrix had told the investigating officer that she had been a virgin prior to the alleged attack and that, at a later deposition, she indicated that she had not been a virgin prior to the alleged attack. A witness must subscribe his deposition and make an oath that it contains the truth. RSA 517:7. A person reporting an alleged crime also has an obligation to tell the truth. *See generally* RSA 641:3, :4. It would appear that the prosecutrix lied about her virginity. Either she lied to a law enforcement officer who was investigating her complaint of rape, or she lied under oath during her deposition. Regardless of which statement was true, her inconsistent statements under the circum-

stances cast at least some doubt on her credibility. Because the prejudice to the prosecutrix resulting from the disclosure that she may not have been a virgin at the time of the alleged rape is minimal, the defendant must be afforded the opportunity to cross-examine her concerning her inconsistent statements. *See State v. Howard, supra* at 58, 426 A.2d at 461; *State v. Johns*, 615 P.2d 1260, 1263–64 (Utah 1980).

The defendant next argues that RSA 632-A:6 (Supp. 1979) unconstitutionally impaired his ability to rebut certain medical evidence presented against him. The State contends that the defendant did not adequately preserve this issue for appeal, but because the issue is likely to be raised in the second trial, we will consider it. *State v. Pugliese*, 120 N.H. 728, 731, 422 A.2d 1319, 1321 (1980).

■   The defendant argues that the trial court's ruling that RSA 632-A:6 (Supp. 1979) barred any evidence of the prior sexual activity of the prosecutrix with any person other than the defendant precluded him from questioning her with regard to her sexual activities on the day preceding the alleged rape. He contends that this ruling violated his constitutional right to rebut the case against him by attempting to establish that she had sexual relations with a person other than the defendant and that such relations accounted for the presence of sperm in her vagina on the day of the alleged rape. We agree.

■   As we have stated above, *State v. Howard* established that the protection from undue harassment afforded to a prosecutrix by RSA 632-A:6 (Supp. 1979) must yield to the defendant's right to confront the evidence against him. The sexual activities of a prosecutrix immediately prior to an alleged rape may be a relevant area for cross-examination. *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir. 1978); *see State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 29, 545 P.2d 946, 953 (1976) (in banc). This is especially true where, as here, the evidence of prior sexual activities might explain physical injuries of the prosecutrix, *State v. Murphy*, 134 Vt. 106, 111–12, 353 A.2d 346, 350 (1976), or the origin of semen. *State ex rel. Pope v. Superior Court, supra* at 29, 545 P.2d at 953; *Pack v. State*, 571 P.2d 241, 245–46 (Wyo. 1977). In such cases, however, the defendant must establish through medical evidence that the particular prior sexual activities of the prosecutrix that he desires to raise are relevant to her physical condition. *See State v. Williams*, 18 Wash. App. 398, 402–03, 569 P.2d 1190, 1192–93 (1977). For example, where the defendant, in an attempt to estab-

lish that the presence of motile sperm in the prosecutrix's vagina at the time of a medical examination conducted after the alleged rape is not inconsistent with his denial of intercourse, seeks to introduce evidence of the victim's past sexual activities, he must be able to show through medical evidence that sperm could remain motile from the time of the prior sexual intercourse to the examination conducted after the alleged rape. *Pack v. State, supra* at 245.

The State's case included the testimony of a physician who stated that he had examined the prosecutrix between 8:30 and 9:00 p.m. on the evening of the alleged rape and that he found semen and "non-motile" sperm in her vagina. He gave his medical opinion that the prosecutrix had had intercourse "within hours" of the examination. He also testified that he found some slight tears in the vaginal area but he could not say that they were the result of a rape. The defendant offered evidence that he had normal sperm motility and that after intercourse normally motile sperm could be expected to remain motile in the vagina for up to twelve hours, in the cervix for two to eight days, and in the uterus and ovary ducts for two to two-and-a-half days. The defendant then argued to the jury that the prosecutrix had had intercourse with some person other than the defendant, possibly a boy she had seen the night before the incident, and that this accounted for the presence of sperm in her vagina.

The defendant's explanation of the presence of sperm in the prosecutrix's vagina is plausible, supported by medical evidence, and consistent with his defense that he never had sexual relations with her. He should therefore have had an opportunity to present evidence in support of that explanation to the jury.

■ The defendant's final contention is that the trial court erred in allowing the prosecutrix's mother to testify to statements made by the prosecutrix. Approximately one hour after the alleged rape, the prosecutrix's mother telephoned her daughter at the apartment where the incident allegedly occurred. The mother testified that the prosecutrix was crying, and she asked her daughter what was wrong. The prosecutrix responded that the defendant had raped her.

Whether an out-of-court statement is admissible as a part of the *res gestae* is within the discretion of the trial court, and the mere fact that the statement is made in response to a question asked some time after the incident does not make the statement inadmissible as a matter of law. *State v. Hudson,* 121 N.H. 6, 11, 425

A.2d 255, 257 (1981). We find no abuse of the trial court's discretion.

Accordingly, we remand this case to the superior court for a retrial. Evidence of the prosecutrix's inconsistent statements regarding her virginity, and evidence of her prior sexual activity as it might explain the presence of sperm in her vagina, is admissible at the new trial. The prosecutrix's statements to her mother concerning the rape are also admissible.

*Defendant's exceptions sustained; remanded.*

BATCHELDER, J., did not sit; the others concurred.