Grafton
No. 81-020
No. 81-181
No. 81-051

# The State of New Hampshire

v.

# Richard E. Shute, Jr.

June 9, 1982

*Gregory H. Smith*, attorney general (*Martha V. Gordon*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, of Concord, appellate defender, by brief and orally, for the defendant.

*McSwiney, Jones & Semple*, of Concord (*Carroll F. Jones* on the brief and orally), for Glenn W. Bricker, M.D., intervenor.

DOUGLAS, J. The defendant appeals his convictions in Superior Court (*Johnson*, J.) of aggravated felonious sexual assault, RSA 632-A:2 III (Supp. 1981), and kidnapping, RSA 633:1 I(d). Finding reversible error, we remand for a new trial.

On July 7, 1979, the prosecutrix met her boyfriend, Tim Smith, at his home in Meredith, New Hampshire. He was accompanied by Richard Shute, the defendant, whom the prosecutrix met for the first time that evening. The three left Smith's home in his car. When the car began to have serious muffler problems, the defendant, who was driving, stopped the car, and Smith got out to repair

the muffler. While Smith was underneath the car working on the muffler, the defendant drove away with the prosecutrix. He stopped the car in a dark, deserted clearing on a dirt logging road at about 1:30 a.m. on July 8. According to the prosecutrix, the defendant removed her clothes and forced her to submit to sexual intercourse two times during the night. At approximately 5:00 a.m., the prosecutrix testified that she again submitted to sexual intercourse because the defendant threatened her with a knife. After a fourth incident, the defendant allowed the prosecutrix to leave.

The defendant was indicted by a grand jury for aggravated felonious sexual assault, RSA 632-A:2 III (Supp. 1981), and kidnapping, RSA 633:1 I(d). His first trial ended in a mistrial when one juror announced he had heard about the case and was "prejudiced" against the defendant. A second trial, which commenced on November 3, 1980, culminated in convictions on both charges. The court denied the defendant's motions for judgment of acquittal notwithstanding the verdict and for new trial and sentenced him to 7 1/2 to 15 years imprisonment for the crime of aggravated felonious sexual assault. The defendant appealed. Sentence has not yet been imposed for the kidnapping conviction.

The defendant claims the trial court's denial of his motion for a transcript violated his right to equal protection of the laws. At the hearing on the motion, defense counsel stated that the transcript was needed to impeach the prosecutrix because she had changed her story at least two, and possibly three, times since her deposition. He specified that she made statements during the first trial which were inconsistent with statements she made previously under oath at the deposition. Defense counsel believed it would also be useful to compare the prosecutrix' testimony during the second trial with her prior testimony. Although he would have liked the entire transcript of the first trial, defense counsel narrowed his request to the testimony of the prosecutrix and the State's two medical experts. The State objected to the defendant's motion on the ground of expense, and the court denied the motion. We hold that the court erred.

In *Britt v. North Carolina*, 404 U.S. 226 (1971), the United States Supreme Court held that an indigent defendant in a criminal case is entitled to a free transcript of his first trial, if it ends in a mistrial, when the transcript is needed for an effective defense on appeal. *Id.* at 227. Whether a transcript is needed for an effective defense depends on two factors: first, the value of the transcript to the defendant; and second, the availability of alterna-

tive devices that would fulfill the same functions as a transcript. *Id.* In this case, the transcript would have been extremely valuable to the defendant because he might have been able to use it to impeach the prosecutrix, whose testimony formed the basis for the State's entire case. *See id.* at 228; *United States v. Rosales-Lopez,* 617 F.2d 1349, 1355 (9th Cir. 1980).

Unlike the court in *Britt,* we find that the defendant before us did not have an adequate substitute for a transcript. For example, during defense counsel's cross-examination of the prosecutrix at the second trial on November 3, 1980, the following colloquy took place: "Q. Would you say that your testimony today differs quite a bit with . . . your previous testimony . . . ? A. No." Without the transcript defense counsel's ability to impugn the prosecutrix' credibility was severely impaired.

The alternatives available to the defendant in *Britt* were not viable options in this case. In *Britt,* the defendant's attorney had the alternative of informally asking the court reporter, who was a good friend of all the local lawyers, to read back his notes of the mistrial. *Id.* at 229. The State urges this court to accept such a procedure as an adequate substitute for a transcript. We refuse to do so. First, the defendant's ultimate request was not onerous: he did not ask for the entire transcript, but only for the testimony of three witnesses. Second, we cannot conclude that the trial in this case took place in a small town where the stenographer was a "good friend" of all the local lawyers and was willing to read back his notes routinely. Moreover, if New Hampshire court stenographers were regularly required to read back their notes of mistrials or to appear as witnesses at subsequent trials, they would not have time to perform their primary function, to record court proceedings and prepare transcripts for appeals.

■ We are compelled by the holding in *Britt* to conclude that the defendant's constitutional right to equal protection of the laws under the fourteenth amendment to the United States Constitution has been violated. He is therefore entitled to a new trial.

■ Since this case began in 1980, the parties have disputed admission of the victim's prior sexual history. At the first trial, the court held that the rape shield statute, RSA 632-A:6 (Supp. 1981), totally barred evidence of the victim's prior consensual sexual activity. At the second trial, the court again ruled that the statute prohibited questioning relating to prior consensual sexual activity. Approximately one month after the defendant filed his notice of appeal, we held in *State v. Howard,* 121 N.H. 53, 60–61, 426 A.2d

457, 462 (1981), that evidence of a prosecutrix' prior sexual activity could be relevant and admissible in certain *limited* circumstances. We have also held that the prosecutrix may be cross-examined about *prior inconsistent statements* relating to her previous sexual activity. *State v. LaClair*, 121 N.H. 743, 746, 433 A.2d 1326, 1329 (1981). Subsequent to the decision in *State v. Howard*, the defendant filed a motion to set aside the conviction as well as a motion for new trial. At the motion hearing, defense counsel addressed the impact of *State v. Howard* on the defendant's case.

■■ We have previously held that we will apply *State v. Howard* retroactively when the issue it addresses has been properly raised in the trial court and preserved for appeal. *State v. Wonyetye*, 122 N.H. 39, 40, 441 A.2d 363, 364 (1982). The defendant challenged the trial court's application of the rape shield statute by excepting to its ruling and appealing to this court. Because the defendant properly excepted to the trial court's application of the rape shield statute and preserved the issue for appeal, he is entitled to the procedural protections of *State v. Howard. See State v. LaClair*, 121 N.H. at 748, 433 A.2d at 1330. The defendant is entitled to demonstrate at a hearing held out of the presence of the jury that due process requires introduction of evidence concerning the prosecutrix' prior consensual sexual activity. *State v. Howard*, 121 N.H. at 58–59, 426 A.2d at 461. The evidence is admissible when the trial court, in its discretion, determines that the probative value of the evidence outweighs its prejudicial effect on the prosecutrix. *Id.*, 426 A.2d at 461; *see State v. LaClair*, 121 N.H. at 745, 433 A.2d at 1328.

■ We reject, however, the defendant's argument that he should be allowed to present evidence of the prosecutrix' predilection for promiscuity and indiscriminate sexual activity. We will not permit defense counsel to parade a prosecutrix' entire sexual history before a jury. Rather, prior sexual activity may be admitted only for those limited purposes recognized in *State v. Howard* and *State v. LaClair*.

In the interest of judicial economy and because some of the issues raised will be relevant upon retrial, we address the defendant's remaining arguments. *State v. LaClair*, 121 N.H. 743, 746, 433 A.2d 1326, 1329 (1981).

The defendant challenges the indictment charging him with aggravated felonious sexual assault under RSA 632-A:2 III (Supp. 1981). The statute provides that a "person is guilty of a class A felony" when he "coerces the victim to submit [to sexual penetration] by threatening to use physical force, physical violence or superior

physical strength on the victim, *and the victim believes that the actor has the present ability to execute these threats.*" RSA 632-A:2 III (Supp. 1981) (emphasis added). The indictment for aggravated felonious sexual assault did not allege the italicized portion of the statute as an element of the offense. The defendant considers this a fatal defect justifying dismissal of the indictment. We agree with the trial court, which denied the defendant's motion to dismiss the indictment, that the indictment was sufficient.

■ ■ The indictment returned by the grand jury charged that the defendant "[d]id purposely engage in sexual penetration with [the prosecutrix] by forcing her to submit by threatening serious bodily injury, to wit: did cause [the prosecutrix] to submit to sexual penetration by threatening her with a knife." The purpose of an indictment is to apprise the defendant of the charges he must be prepared to meet and to protect him from being placed in double jeopardy for the same crime at a later date. *State v. Carroll*, 120 N.H. 458, 460, 417 A.2d 8, 10 (1980); 1 R. McNamara, Criminal Practice and Procedure § 310, at 192 (1980). An indictment is constitutionally sufficient if it gives the defendant enough information about the nature and cause of the accusation to allow him to prepare for trial. *State v. Miner*, 122 N.H. 86, 87–88, 441 A.2d 1150, 1151 (1982); *State v. Darcy*, 121 N.H. 220, 223, 427 A.2d 516, 518 (1981). This requires inclusion of all the elements constituting the offense. *State v. Bussiere*, 118 N.H. 659, 661, 392 A.2d 151, 153 (1978); 1 R. McNamara, *supra* § 310, at 194.

■ Although the indictment did not quote the final clause of RSA 632-A:2 III (Supp. 1981), it informed the defendant of the factual basis of the charge by stating that he forced the prosecutrix to submit to sexual penetration by threatening her with a knife. She would not have been forced to submit if she had not believed the defendant had the present ability to carry out his threat. We hold that the indictment was constitutionally sufficient. *See State v. Dukette*, 122 N.H. 336, 338, 444 A.2d 547, 549 (1982).

■ The defendant was also indicted for kidnapping under RSA 633:1 I(d) which provides: "[a] person is guilty of kidnapping if he knowingly confines another under his control with a purpose to . . . [c]ommit an *offense* against him." (Emphasis added.) The "offense" alleged in the indictment was aggravated felonious sexual assault. *See* RSA 632-A:2 III (Supp. 1981). The defendant contends that the kidnapping indictment is fatally flawed because the "offense" integral to the crime, that is, *aggravated felonious sexual assault*, was not properly alleged and should have been dismissed,

as discussed above. Because we conclude that the sexual assault indictment was sufficient, we uphold the trial court's decision denying the defendant's motion to dismiss the kidnapping indictment.

 The defendant argues that the trial court improperly admitted hearsay statements on four separate occasions. To preserve issues for our consideration, counsel must take contemporaneous objections and exceptions. *State v. Glidden*, 122 N.H. 41, 48, 441 A.2d 728, 732 (1982). On three occasions during trial, defense counsel objected but did not except to the admission of the disputed statements; on the fourth he neither objected nor excepted. Objections to the trial court's rulings, therefore, were not properly preserved for appeal. *See Engle v. Isaac*, 102 S.Ct. 1558, 1570 (1982).

Finally, we consider the issue of a disputed expert witness fee. Glenn W. Bricker, M.D., testified in both trials as an expert medical witness for the defense. After the first trial, the court approved his $600 bill for services, representing six hours of preparation and testimony at $100 per hour. The court, however, declared a mistrial, and the trial judge granted the defendant's motion to employ Dr. Bricker as an expert witness for the second trial. In granting the motion, the court stated that Dr. Bricker was to receive "the usual and reasonable fees charged by such experts." Following the November retrial, Dr. Bricker submitted a bill for $1,300. The court refused to award Dr. Bricker more than $300, the maximum fee set by RSA 604-A:6 when it was enacted seventeen years ago. When Dr. Bricker contested the decision, the trial court transferred the following question of law to this court: whether Dr. Bricker is entitled to a fee in excess of the statutory limit.

RSA 604-A:6 provides that the trial court may authorize counsel for a criminal defendant to obtain the services of an expert witness. Except in extraordinary circumstances, the expert's compensation may not exceed $300, exclusive of reasonable expenses. If the trial court does not find that "extraordinary circumstances" exist, then the court cannot approve payment of a fee exceeding $300.

 Because Dr. Bricker received $600 for testifying at the first trial, he implies that he was misled into believing that the court would again approve a fee exceeding $300. At a December 22, 1980, hearing, the trial court explained its rationale for both fees. The $600 fee was approved because extraordinary circumstances existed: Dr. Bricker was hired hurriedly the evening before trial began, and was inconvenienced by a late-night confer-

ence and other last-minute preparations. On the other hand, the court felt that Dr. Bricker did not prepare anything new for the second trial and wanted to be compensated for travel time, which the court never approved. In addition, he sought compensation for time spent at the Dartmouth Medical School Library researching the effects of certain hallucinogenic drugs used by the prosecutrix in order to educate defense counsel, who had hired him. Because the record does not require us to find any extraordinary circumstances, we uphold the court.

██ ██ Of course, we recognize that the proper defense of some criminal cases may require the retention of experts, without whose services a conviction may be held to have been improperly obtained. This must be kept in mind by our trial judges in interpreting the phrase "extraordinary circumstances." A constitutionally fair trial may require appropriate flexibility in allowing reasonable fees.

Other issues raised by the defendant concerning hearsay and the judge's jury instructions may not recur, so we need not address them.

*Remanded for new trial.*

BATCHELDER and BROCK, JJ., did not sit on or participate in No. 81-051 regarding expert witness fees; otherwise all concurred.