Cheshire
No. 82-537

# The State of New Hampshire

v.

# Terrence H. Monahan, Jr.

May 4, 1984

*Gregory H. Smith*, attorney general (*John A. Malmberg*, assistant attorney general, on the brief), by brief for the State.

*Terrence H. Monahan, Jr.*, by brief, pro se.

BATCHELDER, J. The defendant was convicted of three counts of theft by deception, RSA 637:4. He appeals his convictions, alleging

that the superior court erred in denying seven motions filed by the defendant prior to and during trial. For the reasons which follow, we affirm.

The trial record shows the following facts. On July 2, 1980, the defendant, Terrence Monahan, registered at a motel in Swanzey owned and operated by Viola Claus, the victim. The defendant registered as Thomas Johnson and gave a non-existent address. The defendant stayed at the motel intermittently for a total of approximately two weeks. During his stay, he and the victim discovered that they had a common interest in antique automobiles, and they entered into a verbal agreement to buy, restore and sell antique automobiles, and to split the profits evenly.

Pursuant to this agreement, on July 23, 1980, the victim gave the defendant three thousand dollars toward the purchase of an antique Ford. The defendant later told the victim that he had bought the Ford but had left it to have repairs done. Mrs. Claus never saw the car or any papers relating to the car.

On or about July 28, 1980, the victim gave the defendant ten thousand dollars toward the purchase of a Cadillac, a Lincoln and a Thunderbird. The defendant bought the Thunderbird and registered it in the name of Thomas Johnson. He also bought a Lincoln Continental and had a friend, Gloria Johnson, register the car in her name.

On August 4, 1980, the victim gave the defendant three thousand dollars for automobile parts. Later that day, the defendant left the motel in the Thunderbird, leaving, in his motel room, some clothes and the lights and television on. Although, the victim expected him to return, she never saw or heard from him again until the trial. At trial, the defendant's brother testified that the Lincoln and some parts were being stored at his home in Wyoming, New York and that the Thunderbird was garaged in Warsaw, New York.

I. *Motion to Dismiss for Lack of a Speedy Trial*

On July 15, 1982, the defendant filed a motion to dismiss for lack of a speedy trial. After a hearing on July 26, 1982, the Superior Court (*Contas*, J.) denied the motion.

■ The State and Federal Constitutions guarantee an accused the right to a speedy trial. N.H. CONST. pt. I, art. 14; U.S. CONST. amends. VI, XIV. In order to determine whether this right has been violated under either constitution, the court employs a balancing test, weighing the conduct of the State against the conduct of the accused in terms of four factors. *State v. Zysk*, 123 N.H. 481, 485, 465 A.2d 480, 482 (1983); *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

These four factors consist of the length of the delay, the reasons for the delay, the defendant's assertion of his or her constitutional rights and the prejudice to the defendant. *State v. Zysk supra; Barker v. Wingo supra.* However, unless the length of the delay is presumptively prejudicial, no inquiry need be made into the other factors. *State v. Quinlan,* 122 N.H. 51, 53, 440 A.2d 13, 14 (1982); *Barker v. Wingo supra.* In this case, the delay of twenty-three months between indictment and trial is presumptively prejudicial, thus requiring examination. *See State v. Weitzman,* 121 N.H. 83, 86, 427 A.2d 3, 5 (1981) (thirteen-month delay in misdemeanor case requires further examination).

Several reasons exist for the delay of twenty-three months between the indictments in October 1980 and the trial in September 1982. While investigating the complaint, the New Hampshire State Police attempted to locate the defendant but were unable to do so. Nonetheless, on October 9, 1980, the grand jury indicted the defendant on three counts of theft by deception. At some point thereafter, the State filed a detainer with the federal authorities. On May 4, 1981, the federal authorities arrested the defendant on unrelated charges pending in Massachusetts, and on May 24, 1981, transferred him to the Rockingham County jail pursuant to an agreement between the federal and county governments. He then was transferred to the New Hampshire State Prison where he remained until August 12, 1981, at which time he was returned to the federal authorities. The county attorney's office claims that it was unaware that the defendant was incarcerated in New Hampshire from May 24, 1981, to August 12, 1981.

On January 25, 1982, the federal authorities informed New Hampshire that the defendant was incarcerated in the federal penitentiary in Sandstone, Minnesota. Pursuant to the Interstate Agreement on Detainers, RSA 606-A:1, New Hampshire requested, on February 12, 1982, extradition and temporary custody of the defendant. The defendant was arraigned in New Hampshire on June 7, 1982.

The trial was scheduled for July 6, 1982. However, on June 28, the defendant informed the trial court that because of lack of access to the law library at the State prison, he would not be ready for trial. The trial was rescheduled for August 16, 1982. The trial was then continued until September 7, 1982, again at the defendant's request.

Although the great majority of the delay was due to the defendant's actions, the initial delay may be attributed to the State. From October 1980 until May 1981, the record is barren of any facts which would support a diligent, good-faith effort by the State to bring the defendant to trial. *See State v. Hudson,* 119 N.H. 963, 966,

409 A.2d 1349, 1351 (1979). The record shows that the State filed a detainer against the defendant but does not indicate when. *See People v. King*, 83 A.D.2d 674, 675, 442 N.Y.S.2d 227, 228 (1981) (State promptly issued bench warrant and placed it in interstate police teletype network). Thus, from the record, we cannot charge this delay to the defendant.

However, the rest of the delay is attributable to the defendant. From May 1981 until August 1981, the defendant was unavailable because federal charges were being brought against him. *See* RSA 606-A:1, art. IV(a) (applies to individuals serving term of imprisonment in other jurisdictions); *Estrada v. State*, 611 P.2d 850, 853–54 (Wyo. 1980). The State, once it had learned of the defendant's whereabouts in the federal penitentiary, instituted extradition proceedings which necessarily encompassed some delay. The trial was scheduled for a month after the defendant's arrival in New Hampshire and was delayed until September only at the defendant's request. The defendant cannot take advantage of any delay that he has occasioned. *State v. Fraser*, 120 N.H. 117, 120, 411 A.2d 1125, 1127 (1980). Accordingly, the State may be charged only with the initial delay between October 1980 and May 1981, and there is no evidence that the delay was deliberate.

This court emphasizes the last two factors of this analysis— the defendant's assertion of his right and the prejudice which resulted from the delay. *State v. Zysk*, 123 N.H. 481, 485, 465 A.2d 480, 482 (1983). Although the defendant alleged that he asserted his right to a speedy trial twice in June 1981, once in a motion to dismiss and once in a petition for bail, neither the county attorney nor the superior court have any record of receiving such a motion or a petition from the defendant. A record exists only of the motion to dismiss which the defendant filed on July 15, 1982.

The defendant has alleged also that prejudice has resulted from this delay: that his memory has dimmed; that a witness has died; that he was precluded from a number of programs at the penitentiary; that he was not free to investigate; and that he was removed from his family. This court has held that the mere passage of time and the resulting impairment of memories is not a sufficient basis to wrench the right to a speedy trial from its proper context. *State v. Little*, 121 N.H. 765, 773, 435 A.2d 517, 522 (1981). Without adding any specificity to these allegations and without showing the prejudice which resulted, the defendant has merely alleged that his memory has dimmed and that a witness has died. *State v. Zysk*, *supra* at 486, 465 A.2d at 483.

Additionally, the State cannot be held responsible for the defendant's being unable to investigate or removed from his family. The defendant was not in prison because he was awaiting trial in New Hampshire, but because he was serving a sentence for another crime. Although the defendant may have suffered some prejudice in being denied an opportunity to participate in certain programs while in the penitentiary, *see Moore v. Arizona*, 414 U.S. 25, 27 (1973), which he has only alleged, little prejudice has been shown in the record.

■ Balancing the conduct of the State and the defendant in terms of the four factors, we conclude that the defendant's right to a speedy trial has not been violated. Thus, the superior court did not err in denying the defendant's motion.

## II. *Motion to Strike Alias*

The indictments in this case were brought against "Terrence Monahan a/k/a Thomas Johnson." The defendant moved to strike the alias from the indictments on the grounds that its inclusion was irrelevant and prejudicial. After a hearing on June 18, 1982, the Superior Court (*Dalianis*, J.) denied the motion.

■■ The inclusion of an alias in an indictment is not inherently prejudicial; it does not automatically raise the spectre of a hardened criminal. *See United States v. Esposito*, 423 F. Supp. 908, 911 (S.D.N.Y. 1976). Rather, the inclusion of an alias is relevant and permissible when it is necessary to identify the defendant in connection with the acts charged in the indictment. *E.g., United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976); *United States v. Esposito supra*. In this case, the victim knew the defendant only as Thomas Johnson and the State necessarily had to connect this "Thomas Johnson" with the defendant. Also, a number of the exhibits bore the name of Thomas Johnson—the motel registration cards, a check made out to Thomas Johnson and signed by Mrs. Claus, and the registration of the Thunderbird. Given the circumstances of this case, it was not error for the superior court to deny the motion.

## III. *Motion to Quash the Indictments*

The defendant moved to quash the indictments against him on the grounds that they did not set out all the elements of the crime with the requisite mental state, and that the facts and circumstances of each element were not included. After a hearing on July 20, 1982, the Superior Court (*Contas*, J.) denied the motion.

■ An indictment is constitutionally sufficient if it gives the defendant enough information about the nature and cause of the

accusation to prepare for trial. *State v. Shute*, 122 N.H. 498, 504, 446 A.2d 1162, 1165 (1982). This requires inclusion of all the elements constituting the offense. *Id.*, 446 A.2d at 1166.

RSA 637:4, I, theft by deception, provides that "a person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." The first indictment, upon which the other indictments are patterned, provides:

> Thomas Monahan "did obtain and exercise control over three-thousand dollars . . . of one Viola Claus . . . by deception and with the purpose to deprive the owner thereof, in that he did obtain said money for the purpose of buying classic car parts, that he did not in fact buy said parts and converted said money for his own use."

First, the defendant claims that the indictments failed to allege that the defendant *purposely* obtained and exercised control, as required by RSA 626:2. However, we have held that the State is not required to charge redundantly by stating that a defendant acted purposely with the purpose of . . . . *See State v. Chaisson*, 123 N.H. 17, 25, 458 A.2d 95, 99 (1983); *State v. Bussiere*, 118 N.H. 659, 662–63, 392 A.2d 151, 154 (1978). Accordingly, alleging that the defendant "did obtain and exercise control . . . with the purpose" was sufficient.

Second, the defendant alleges that the indictments should have read "obtained or exercised *unauthorized* control." However, unauthorized control is not an element of the offense. RSA 637:4. Third, the defendant alleges that the State must include in the indictments all the facts and circumstances of the offense. However, the State need not plead every fact underlying the offense; rather, the indictment need contain only "enough facts to warn the accused of the specific charges against him." *State v. Fennelly*, 123 N.H. 378, 386, 461 A.2d 1090, 1094 (1983) (quoting *State v. Manchester News Co.*, 118 N.H. 255, 257, 387 A.2d 324, 327, *appeal dismissed*, 439 U.S. 949 (1978)). The present indictments, naming the victim, the amount of money involved, and the reason the money was given to the defendant, clearly meet this standard.

## IV. *Motion to Dismiss for Selective Prosecution*

The defendant filed a motion to dismiss for selective prosecution, alleging that the State has not prosecuted similarly situated individuals and that the State based its prosecution of his case on an unjustifiable standard; namely, past criminal activity or conviction.

After a hearing on July 20, 1982, the Superior Court (*Contas*, J.) denied the motion.

Selective prosecution is not, in and of itself, a constitutional violation. *Oyler v. Boles*, 368 U.S. 448, 456 (1962). Rather, the defendant must show that (1) others similarly situated have not generally been prosecuted and (2) the prosecution was based on clearly impermissible discriminatory grounds such as race, religion or exercise of first amendment rights. *United States v. Blitstein*, 626 F.2d 774, 782 (10th Cir. 1980), *cert. denied*, 449 U.S. 1102 (1981); *United States v. Lichenstein*, 610 F.2d 1272, 1281 (5th Cir.), *cert. denied*, 447 U.S. 907 (1980).

We will not assume that prosecution resulted from intentional and purposeful discrimination in enforcement of the law. *State v. Pinsince*, 105 N.H. 38, 41, 192 A.2d 605, 607 (1963). The defendant alleges that other individuals had entered into business agreements with Mrs. Claus, had violated those agreements and had not been prosecuted. These bare allegations are insufficient to establish selective prosecution. The superior court did not err in denying the defendant's motion.

V. *Motion for a Directed Verdict*

At the close of the trial, the defendant moved for a directed verdict. The Superior Court (*Dunn*, J.) denied the motion.

The defendant alleges that his conviction was based on insufficient evidence in that the State failed to prove any specific intent on the part of the defendant to deprive Mrs. Claus of her property. In determining the sufficiency of evidence, we must consider all the evidence and the reasonable inferences derived therefrom in the light most favorable to the State and determine whether any rational trier of fact could have found this statutory *mens rea* beyond a reasonable doubt. *See State v. Renfrew*, 122 N.H. 308, 312, 444 A.2d 527, 529 (1982). In this case, evidence was introduced that the defendant, upon arriving at the motel, gave a false name and address. Mrs. Claus gave the defendant a total of thirteen thousand dollars with which he was to buy a Ford, a Lincoln Zephyr, a Cadillac and a Thunderbird, and three thousand dollars to buy antique car parts. Mrs. Claus never saw the car parts nor the Ford. She did see the Thunderbird and the Lincoln but did not see any of the paperwork. The defendant registered the Thunderbird under his alias and had a friend register the Lincoln under her name. Additionally, the defendant left the motel under suspicious circumstances. Based on this record, we cannot say that no rational trier of

fact could find beyond a reasonable doubt that the defendant intended to deprive Mrs. Claus of her property and was guilty of theft by deception.

## VI. *Motion for a Continuance*

The defendant's trial was originally scheduled for July 6, 1982. The trial was continued twice at the request of the defendant, being rescheduled for August 16 and then September 7. On August 31, the defendant again filed a motion for a continuance. At the hearing on the motion on September 7, 1982, the defendant alleged that some witnesses were unavailable and such witnesses were necessary to provide an adequate defense. The Superior Court (*Dunn,* J.) denied the motion and the case went to trial the next day.

 Ruling on a motion for a continuance is within the sound discretion of the superior court. *State v. Taylor,* 118 N.H. 859, 862, 395 A.2d 1239, 1241 (1978). However, this court must determine whether the failure of the superior court to grant the continuance denied the defendant his right to due process. *See State v. Linsky,* 117 N.H. 866, 879, 379 A.2d 813, 822 (1977).

At the hearing, the defendant informed the court that Mrs. Mac-Neil was a material witness, had a heart problem and phlebitis and, according to her doctor, would be unable to travel until the middle of October. The State responded by saying that Mrs. MacNeil was the defendant's mother and that the doctor's certificate did not refer to Mrs. MacNeil's condition, only that Mrs. MacNeil was unable to take a long trip at that time. The State had called the doctor's office and had been told that Mrs. MacNeil informed the doctor that there was a divorce proceeding for which she was to be a witness, that she did not want to attend and that she had asked that doctor to write a letter having to do with her inability to attend the trial.

 From the record, we cannot say that the defendant was denied due process. *See State v. MacLeod,* 119 N.H. 480, 483, 402 A.2d 1338, 1340 (1979). Since the record reveals no resulting prejudice to the defendant, the denial of the defendant's motion for a continuance was within the proper exercise of the superior court's discretion.

## VII. *Motion for a Mistrial*

At trial, the defendant put his brother Michael Monahan on the stand. During cross-examination, the State asked Michael Monahan if he was aware that his brother was known as Thomas Johnson. In answering, the witness stated that the defendant had been known as

Schroeder and that "[t]his is pre-'76, the F.B.I. was looking for him in relation to something else." The defendant objected and the Superior Court (*Dunn*, J.) advised the jury to "disregard that answer and put it out of your consideration entirely." The defendant did not object to the curative instruction.

Approximately nine pages later in the transcript, during a recess, the defendant asked for a mistrial, allegedly on the basis of the witness' answer which referred to the F.B.I. The motion was denied.

Assuming that the motion for a mistrial was timely, *see State v. LaBranche*, 118 N.H. 176, 179, 385 A.2d 108, 110 (1978), we cannot say that the superior court erred in denying the motion.

 When evidence concerning past criminal convictions or indictments is introduced to establish guilt or show a propensity to commit a crime, curative instructions will not erase the prejudice to the defendant. *See State v. Woodbury*, 124 N.H. 218, 221, 469 A.2d 1302, 1304–05 (1983). However, in this case, the reference to the F.B.I. looking for the defendant was not introduced by the State to establish guilt or to show a propensity to commit a crime, nor did the reference clearly involve the defendant's prior police record or his involvement in a non-related crime. The statement was an unexpected inadvertent response by a defense witness. Thus, we cannot say that the answer was so prejudicial that the contemporaneous instructions could not cure any possible harm. *See State v. Johnson*, 365 So.2d 1267, 1271 (La. 1978); *State v. Sykes*, 559 S.W.2d 643, 645 (Mo. Ct. App. 1977); *see also State v. Seeley*, 116 N.H. 831, 834, 368 A.2d 1171, 1174 (1976). We assume that jurors followed the court's instructions. *State v. Preston*, 121 N.H. 147, 150, 427 A.2d 32, 34 (1981). Thus, the denial of the motion for a mistrial was not in error.

*Affirmed.*

All concurred.