David Wayne PINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–86–00120–CR.

Court of Appeals of Texas,
El Paso.

July 1, 1987.

Ralph R. Garcia, Patrick M. Garcia, Garcia and Garcia, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before OSBORN, C.J., and SCHULTE and WOODARD, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a conviction for aggravated sexual assault. The jury assessed punishment at thirteen years' imprisonment. We reverse and remand.

 In Point of Error No. One, Appellant contends that the affidavit used to secure a search warrant for Appellant's residence failed to present probable cause to believe that the items sought would be found at such location. At the time the affidavit was prepared, Appellant had been identified in a photographic lineup by the complainant. He had been placed under arrest. The complainant had provided a description of the items observed during the abduction/rape—to include a dark corduroy jacket, a grey T-shirt with blue trim at the collar and sleeves, a handgun and a penlight flashlight. These were the precise items sought in the affidavit and warrant. The affiant was also aware that Appellant was an eighteen-year-old high school student residing at his parents' home, which was in the same area of town that the offense occurred and only a short distance from the place where the complainant's vehicle was found abandoned.

Appellant relies upon the reasoning expressed in *Bridger v. State,* 503 S.W.2d 801, 803–804 (Tex.Crim.App.1974), which invalidated a search warrant under the first prong of the former *Aguilar-Spinelli* standard of review. Specifically, the affidavit failed to provide a reviewable probable cause rationale for the asserted belief that the incriminating items sought were at the described location. That is not the case with the affidavit before us. The affiant's basis for belief is apparent from the face of the affidavit. The items sought were those of the assailant, not the victim. They in-

cluded items of personal clothing. The assailant, identified as Appellant, was a high school student still residing with his parents at the listed address. These factors present more than a mere suspicion as to the location of the items sought. These facts would warrant a reasonably cautious individual to believe that the personal items would be retained, not abandoned, and would most likely be maintained at the suspect's residence. Consequently, we conclude the affidavit does present probable cause. See: *Lopez v. State*, 535 S.W.2d 643, 647–648 (Tex.Crim.App.1976). Point of Error No. One is overruled.

■ Point of Error No. Two complains that the original of the affidavit and warrant was not produced at trial and that a copy was accepted over a "best evidence" objection. See: *Ortiz v. State*, 651 S.W.2d 764 (Tex.Crim.App.1983). The rule permits use of a copy if the court in its discretion finds from the evidence that a reasonable but unsuccessful effort has been made to locate the original and if there is no suspicion that the copy differs from the original. *Ortiz*, at 766; *Anderson v. State*, 621 S.W.2d 805, 809–810 (Tex.Crim.App.1981); *Edwards v. State*, 672 S.W.2d 10, 12 (Tex. App.—Houston [14th Dist.] 1984, no pet.). In this case, Deputy County Clerk June Patrick, supervisor of the civil-criminal division, testified that clerks had searched for the original affidavit and warrant for approximately one month without success. The records indicated that it had not been checked out to anyone since it had been filed. She identified State's pretrial Exhibit No. Three, a purported copy, as bearing the file stamp of the clerk's office. Copies are stamped and returned to the police when the original return is filed. While she could not testify as to the similarity between the copy and the original, Detective Joe Garcia, the affiant, testified that State's Exhibit No. Three was a true and correct copy of the original, differing only with regard to the blue file stamp of the clerk's office. The combined testimony of these two witnesses satisfied the standards enunciated in the cited cases. Point of Error No. Two is overruled.

■ Point of Error No. Three complains of improper bolstering of the complaining witness's identification of Appellant in the photographic and physical lineups. The only specific reference to the statement of facts fails to disclose any bolstering. The prosecutor asked Detective Curtis John Flynn if he attended the physical lineup. An immediate bolstering objection was lodged at the bench. The court did not rule, but the prosecutor ceased any further inquiry. *Bird v. State*, 692 S.W.2d 65, 71 (Tex.Crim.App.1985). Later, Detective Joe Garcia testified without objection that the complainant identified Appellant in the photographic lineup. Any error was waived by failure to object. *Crocker v. State*, 573 S.W.2d 190 (Tex.Crim.App.1978). The next reference to the physical lineup was met with an objection. The objection was sustained and a curative instruction was given. No reversible error is presented. *Furtick v. State*, 592 S.W.2d 616 (Tex.Crim.App. 1980); *Maddox v. State*, 591 S.W.2d 898 (Tex.Crim.App.1979), cert. denied, 447 U.S. 909, 100 S.Ct. 2994, 64 L.Ed.2d 859 (1980). Point of Error No. Three is overruled.

Point of Error No. Four asserts error in prohibiting defense inquiry before the jury into the results of a rape examination which was conducted by Dr. Marshall Dennis Mabry less than three hours after the alleged assault. In accordance with former Tex.Penal Code Ann. sec. 22.065 and a motion in limine by the State, the matter was developed in camera, with the record sealed, and transmitted to this Court. During the rape examination, the complainant disclosed that her last act of intercourse occurred approximately forty-eight hours prior to the alleged rape and that no condom had been used. She also stated during the examination that the assailant experienced orgasm. She later told police and testified in camera that she believed he ejaculated inside her. Dr. Mabry found sperm in the vaginal vault, all of which were nonmotile. He testified that, absent evidence of some rare condition, in his opinion the sperm was in place at least forty-eight hours. Pubic hair was examined, with no foreign hair identified. Scratches were detected on the complainant's inner

thighs, which she herself attributed to climbing over a rock wall after the assault. Blood samples were taken and compared with secretion for which Dr. Mabry could find no source. The secretions matched the complainant's blood type.

The defense sought to introduce all of the aforementioned evidence before the jury in order to argue that there was in fact no physical evidence to corroborate the act of intercourse.

 The State argued and the court ruled that the probative value of this evidence was outweighed by the prejudicial and inflammatory effect of exposing the complainant's prior sexual conduct, relying upon former Section 22.065. That determination is to be reviewed under an abuse of discretion standard. *Allen v. State*, 666 S.W.2d 245 (Tex.App.—Dallas 1984), aff'd, 700 S.W.2d 924 (Tex.Crim.App.1985). The rape-shield laws are not intended to provide an absolute bar to evidence of the complainant's sexual history. They are intended "to protect the victim from questions not within the proper bounds of cross-examination *and which are designed only to harass, annoy or humiliate.*" *Allen*, 700 S.W.2d at 932. [Emphasis added.] We note first that this is not a contest as to consent. Appellant presented an alibi defense and denied any knowledge of the offense. The primary issues are (1) did the act of intercourse take place, and (2) if so, was Appellant the assailant. The complainant's physical condition, as disclosed by the doctor's examination some three hours later, is certainly relevant to both questions. The results of this examination could be argued as negating the alleged rape. The trial court restricted this defense approach by relying on Section 22.065. The trial court further precluded the Appellant from bringing before the jury the thrice-expressed belief that the assailant ejaculated inside her. At the same time, the court conceded to the stratagem by allowing argument on the negative findings of foreign pubic hair or blood type. The precluded matters were relevant and probative. They must be weighed against the prejudicial or inflammatory effect.

 There was no general attack upon the reputation for chastity from which the jury would be urged to derive a basis for discrediting the testimony. Her prior sexual conduct was only a collateral consequence of the consideration of the presence or absence of physical corroboration of the alleged intercourse. Acknowledging the rape-shield laws, courts continue to recognize the admissibility of evidence of prior sexual conduct which is relevant to the physical condition of the complainant during or after the alleged assault. See: *Allen*, 700 S.W.2d at 929–930 n. 4 (cases cited therein with apparent approval); *Capps v. State*, 696 S.W.2d 486, 489–490 (Tex.App.— El Paso 1985, PDRR). See also: Annot. 94 A.L.R.3d 257, secs. 4[c], 7 and 10 (1979). Generally, such cases deal with efforts to establish an exculpatory explanation of positive physical corroboration, relating it to other sexual conduct of the complainant. Such issues include presence of sperm, hymenal rupture, pregnancy, disease or physical trauma. In such cases, the burden is on the defendant to establish through medical evidence that the particular prior sexual activities of the prosecutrix that he desires to raise are relevant to her physical condition noted after the alleged offense. *State v. LaClair*, 121 N.H. 743, 433 A.2d 1326, 1329 (1981) (cited in *Allen*). Where such linkage is not adequately proffered, the inquiry is foreclosed—not because of the theory or potential for admissibility, but for mechanical deficiency in its presentation. See, e.g., *Pack v. State*, 571 P.2d 241, 245–246 (Wyo.1977) (cited in *Allen*).

The present case is peculiar in two respects. First, the State did not introduce the examination results—perhaps to protect the complainant in accordance with Section 22.065, perhaps simply to avoid opening the door to a damaging element in its case, perhaps both. Thus, the defense was left with the burden of attempting to introduce the complete aspects of the examination. Furthermore, instead of a defense effort to demonstrate an alternative exculpatory (reasonable doubt) source for positive physical evidence, here the defense

was seeking to expose an exculpatory explanation of the nonmotile sperm which, if believed by the jury, would leave a negative result as to the alleged rape. Despite this peculiar twist, the fundamental principles of relevancy still apply.

The only case we have found which approximates this trial posture is *LaClair*. The defense in that case was also alibi. A rape examination revealed all nonmotile sperm. The results were offered by the State through a physician who opined that the complainant had experienced intercourse within several hours. Outside the presence of the jury, the defense offered evidence that sperm remains motile in the vagina for twelve hours, for two to eight days in the cervix and for two and one-half days in the uterus. The defendant also offered evidence that his own sperm was of normal motility. The New Hampshire Supreme Court held that it was reversible error to exclude the evidence offered by the defense.

Of course, *LaClair* is distinguishable in certain respects which favor the State and certain respects which favor the defense in the present case. In our case, the State did not introduce and seek to make use of the examination results. On the other hand, in *LaClair*, the complainant denied the suggested prior intercourse. The defense wished to encourage the jury to reject the denial with an inference of prior sexual intercourse based on the sperm motility evidence. In our case, the complainant admitted an act of intercourse, without condom, forty-eight hours earlier. In *LaClair*, the defense evidence was more detailed as to normal sperm motility, and evidence was offered of the defendant's normal sperm motility. We think this distinction from our case goes to the weight of the evidence, and not its relevance and admissibility. Dr. Mabry testified that, absent evidence of a rare condition (not shown or suggested by any evidence in this record), he would conclude to a reasonable medical certainty that the sperm he observed had been in the vagina for at least forty-eight hours, consistent with the admitted prior act of intercourse. We find that *LaClair*, cited by the Texas Court of Criminal Appeals in *Allen* with apparent approval, is more supportive of the Appellant than of the State.

Acknowledging the importance of the rape-shield laws, the Court of Criminal Appeals in *Allen* stated:

> Where the balancing test has been met, where the balance inclines toward the accused, Texas trial courts are free and should not hesitate or admit evidence of the victim's prior sexual conduct to attack her credibility, to impeach her, if it does.

*Allen*, 700 S.W.2d at 929. We emphasize our interpretation of that language as limited to specific impeachment based upon evidentiary analysis of the presence or absence of physical evidence—not general impeachment via suggestions of unchastity or "immoral" behavior. Further stated:

> Where the balance inclines toward the accused, any provision excluding his evidence cannot be squared with the Constitution.

*Allen*, 700 S.W.2d at 932. We conclude that this is such a case where the balance inclines toward admissibility and that the trial court abused its discretion in excluding the evidence regarding the results of the examination, the complainant's admission of the prior act of intercourse, the doctor's testimony as to sperm motility and the complainant's belief that the assailant ejaculated. Point of Error No. Four is sustained.

■ Point of Error No. Five asserts error in the failure to suppress the in-court identification by the complainant, purportedly based upon impermissibly suggestive pretrial lineup procedures. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). We need not analyze the lineup procedures in detail, for we conclude that the record amply discloses an independent origin for the identification by the complainant. *Jackson v. State*, 628 S.W.2d 446, 448–449 (Tex.Crim.App.1982). See also: *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The complainant testified that she had an opportunity to observe the Appellant as he

first approached her in a lighted parking lot. When he forced his way into the vehicle, the interior light came on giving her a further opportunity to observe his features. She testified that at that moment she consciously focused upon his appearance, realizing that if she survived the encounter she would be called upon to identify him. The offense occurred on February 11, 1986. On February 12, the complainant assisted Detective Garcia in generating a composite picture of the assailant, which bears a significant resemblance to the Appellant. Over the next two days, she viewed three different photographic arrays. The first (forty-nine photos) and second (twenty-nine photos) did not include the Appellant; no identification was made. On February 14, 1986, she unequivocally identified Appellant's photograph from a group of twenty-two. On February 15, she positively identified him in the physical lineup of five suspects. She never failed to identify the Appellant and never identified another subject as the assailant. Her in-court identification was unwaivering. Point of Error No. Five is overruled.

■ Point of Error No. Six complains of the refusal to permit cross-examination of Detective Curtis Flynn concerning the nature of the complainant's relationship with a particular El Paso police detective assigned to the automobile theft division, not named in the record. Appellant contends that the inquiry was intended to suggest a general bias on the part of the police in investigating the case. Appellant fails to offer any other precise focus on elements of the investigation or police testimony which might have been affected by such suggested bias. Indeed, a review of the entire evidence discloses little, if any, room for overzealous error. This is not a case which turns upon inference or subjective interpretation of events. The record presents a simple confrontation between an alibi defense (corroborated by Appellant's family) and a positive eyewitness identification (corroborated by the finding of Appellant's thumbprint on the interior rearview mirror of the complainant's vehicle). This is also not a consent case. The questions presented were simply (1) did the act occur at all, and (2) if so, did the Appellant do it.

Furthermore, the precise complaint on appeal is the limitation on the cross-examination of Detective Flynn alone—not the complainant, not the other police witnesses, and not any refusal to permit the alleged boyfriend to be called as a witness. The jury was aware that the complainant was the secretary to a local justice of the peace, that she was friends with a number of police officers, including Detectives Flynn and Garcia who investigated the case and testified, and that she occasionally had lunch with these and other police officers. The jury was also, by inference, made aware that the complainant was engaged, due to her reference to her engagement ring examined by the assailant at the outset of the offense. This "general" information seems adequate in terms of the "general" suggestion of bias posed by the defense. Even Flynn, testifying outside the presence of the jury, was unaware of any further details as to the depth of the complainant's relationship with the other unnamed detective. We perceive no reversible error in the limitation on Flynn's cross-examination. Point of Error No. Six is overruled.

■ Point of Error No. Seven verges on the frivolous in suggesting insufficient evidence to support a conviction. The complainant testified to each element of the offense and unequivocally identified the Appellant. His thumbprint was found on the interior rearview mirror of her vehicle. Point of Error No. Seven is overruled.

The judgment is reversed and the cause remanded for new trial.