**David Wayne PINSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 865–87.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 11, 1989.

Rehearing Denied Oct. 27, 1989.

Patrick M. Garcia A., El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of the offense of aggravated sexual assault and a jury as-

sessed punishment at 13 years in the Texas Department of Corrections. V.T.C.A., Penal Code, § 22.021. On direct appeal the conviction was reversed after the Court of Appeals held that the trial court abused its discretion by excluding from evidence the results of the complainant's medical examination, her admission of a prior act of intercourse, a doctor's testimony as to sperm motility and the complainant's belief that the assailant ejaculated. *Pinson v. State*, 733 S.W.2d 387 (Tex.App.—El Paso 1987). We granted review of State's first three grounds for review to determine whether the Court of Appeals misconstrued V.T.C.A., Penal Code, § 22.065, commonly known as the Texas "rape shield law", *now see* TEX.R.CRIM.EVID. 412; or whether that court's decision is in conflict with applicable decisions of this Court. *See* Tex.R. App.P. 200(c)(3) and (4). We will reverse the judgment of the Court of Appeals.

Dr. Marshall Mabry was the emergency room physician who examined the complainant approximately three hours after she notified police that she had been abducted in her own car from the parking lot of an El Paso discount store, driven into the desert and raped at gunpoint by a young African–American male. During its case-in-chief, the State neither called Dr. Mabry to testify nor attempted to introduce the medical report which was made based upon the examination. As part of its case, the State did call the complaining witness, who testified regarding the incident. On cross-examination, defense counsel asked, *inter alia*, whether she knew the meaning of the term "ejaculate". After receiving an affirmative response, counsel then asked whether ejaculation occurred during the instant assault. The State objected on the grounds previously stated in its motion in limine, that such testimony was inadmissible under V.T.C.A., Penal Code, § 22.065.[1] After a rather lengthy bench

---

1.

Section 22.065, in effect at the time of trial, stated in pertinent part:

§ 22.065. Evidence of Previous Sexual Conduct

(a) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct may be admitted under Sections 22.011 and 22.021 of

conference and recess, an in-camera hearing was held in accordance with the mandate of § 22.065, supra. The complainant was recalled to the stand by defense counsel. She testified appellant ejaculated inside her and also admitted to having engaged in sexual intercourse with her boyfriend two days prior to the assault. On cross-examination, she stated that her opinion as to whether appellant had actually ejaculated during the assault was based upon the fact that his sexual organ was limp and appeared wet. She did not actually see any seminal fluid.

The defense next called Dr. Mabry to the stand. He testified that he had swabbed the victim's vaginal vault and found sperm present but non-motile. According to Mabry, the motility of sperm depends upon a number of factors, with the "normal" male's sperm having an expected survival of two or three days. However, Mabry also stated that in his experience only about ten percent of all alleged sexual assault exams show motile sperm, and agreed with the prosecuting attorney "that a female would not be in a particularly good position to make an accurate determination if an individual had actually ejaculated inside her...." Appellant then moved to allow admission before the jury of the complainant's in-camera admission of sexual intercourse approximately 48 hours before the assault, her opinion that her assailant had ejaculated inside her and Mabry's testimony regarding the presence of non-motile sperm in her vaginal vault in order to argue the lack of physical evidence to corroborate the alleged sexual assault. The State's objection was sustained, the trial court finding that the probative value of the evidence was outweighed by its prejudicial and inflammatory effect, since it would go to show the complainant's prior sexual conduct.

On direct appeal, the Court of Appeals noted that consent was not an issue in the case since the only defense raised was alibi. Therefore, the court concluded, the primary issues were whether the intercourse took place and if so, whether appellant was the assailant. Turning to the question of admissibility, the court found the evidence relating to the complainant's physical condition three hours after the assault to be relevant to both primary issues. Likewise, that court, relying on this Court's opinion in *Allen v. State*, 700 S.W.2d 924 (Tex.Cr. App.1985), and cases therein cited, found the probative value of the evidence to outweigh its prejudicial effect:

> We conclude that this is such a case where the balance inclines toward admissibility and that the trial court abused its discretion in excluding the evidence regarding the results of the examination, the complainant's admission of the prior act of intercourse, the doctor's testimony as to sperm motility and the complainant's belief that the assailant ejaculated. Point of Error No. Four is sustained.

*Pinson*, 733 S.W.2d at 391.

In *Allen*, supra, then Presiding Judge Onion, writing for a majority of the Court, stated:

> If a defendant claims a victim's past sexual conduct is relevant, it is up to the defendant to make a preliminary showing that the issue is material to an issue in the case. This is not raised by merely asserting that it is so. There must be a showing of a reasonable basis for believing that the past sexual conduct is pertinent. If there is no such showing, questions concerning past sexual conduct are to be excluded. If such a showing of

this code only if, and only to the extent that, the judge finds that the evidence is material to a fact issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(b) If the defendant proposes to ask any question concerning specific instances, opinion evidence, or reputation evidence of the victim's sexual conduct, either by direct examination or cross-examination of any witness, the defendant must inform the court out of the hearing of the jury prior to asking any such question. After this notice, the court shall conduct an in camera hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under Subsection (a) of this section. The court shall determine what evidence is admissible and shall accordingly limit the questioning. The defendant shall not go outside these limits nor refer to any evidence ruled inadmissible in camera without the presence of the jury.

relevancy is made, the balancing test of § 21.13 is to be applied in determining admissibility.

\* \* \* \* \* \*

Where the balancing test has been met, where the balance inclines toward the accused, Texas trial courts are free and should not hesitate to admit evidence of the victim's prior sexual conduct to attack her credibility, to impeach her, if it does. A reading of § 21.13 demonstrates it was not designed to forever prohibit all evidence of specific instances of the victim's sexual conduct or opinion or reputation evidence of such conduct. If the evidence of the victim's sexual conduct as contemplated by the statute becomes material to an issue in the case and meets the balancing test, it is admissible even if it is in the form of impeachment evidence....

\* \* \* \* \* \*

In the instant case the prosecutrix testified that after the abduction at gunpoint, the appellant inquired, among other things, if she was a virgin. She answered in the negative and explained in her testimony why she did so under the circumstances. She did not assert that at the time she was in fact a virgin. Whether she was or was not a virgin was not material to an issue in the case. Even if the evidence was relevant and material to an issue, its inflammatory or prejudicial nature certainly outweighed its probative value, if any. The appellant failed to establish his right to attack the credibility of the prosecutrix with her prior sexual conduct under the guidelines of § 21.13. The trial court properly excluded the offered testimony under § 21.13.

*Allen*, 700 S.W.2d at 930 (footnote material deleted).[2]

■ In the instant case, contrary to the conclusion arrived at by the appeals court below, we do not believe that appellant met his initial burden in demonstrating the ma-

teriality of the offered evidence. As the State pointed out after the in-camera hearing, the complainant's statement that appellant had ejaculated inside her was shown to merely be an opinion based upon physical manifestations of the appellant's body unsupported by any evidence of discharge of seminal fluid. Expert testimony showed the layman's knowledge of ejaculation is limited to such physical manifestations. In Dr. Mabry's opinion, it is not normally apparent to a woman when the ejaculatory stage has been reached. We therefore see no material relevance of such evidence for purposes of "impeachment."

Moreover, simply because the complainant believed her assailant had ejaculated during the assault does not automatically confer material status to the offered evidence regarding non-motile sperm in the medical examination report, *vis a vis* the defensive theory of alibi. Although appellant offered the alternative theory that someone else could have committed the assault, he did not directly exclude himself with any evidence showing the motility or non-motility of his own sperm. The record of the in-camera hearing reflects that defense counsel argued the evidence should be admitted because it showed that *most* males would *normally* ejaculate motile sperm; there was no showing whether appellant had been tested and found to be within that group. Without such a demonstrated nexus, there was no reasonable basis for believing that the complainant's sexual conduct 48 hours prior to the assault was pertinent to the case.

Furthermore, it was not a material issue whether or not the assailant had actually ejaculated during the assault. Section 22.-021, supra, requires, and the indictment in the instant cause recited that appellant committed the enumerated offense by means of penetration of the complainant's sexual organ. It is not required nor was it pled that ejaculation occurred during the course of the assault. While this may have

---

**2.** V.T.C.A. Penal Code, § 21.13 was the precursor statute to § 22.065, which in turn as noted *ante* was repealed by including the provision in the Texas Rules of Criminal Evidence effective September 1, 1986. Acts 1985, 69th Leg., ch. 685, § 9(b). Rule 412 does not substantively change the proscriptions found in its predecessor statutes.

become a "collateral" issue, both because of the presence of non-motile sperm and the complainant's opinion that her assailant had ejaculated, the evidence had no direct nexus to the material issue of penetration given the appellant's failure to demonstrate why he should be excluded from consideration.

 As *Allen*, supra, teaches us, a criminal defendant's right to test the credibility of an adverse witness is not without bounds. "Indeed the Supreme Court has expressly stated that a court has a duty to protect a witness 'from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him.'" *Allen*, supra at 931, quoting from *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). Even though it is not to be doubted that a defendant has an undeniable right to confront and cross-examine his complaining witness, rape shield laws such as § 22.065 merely codify procedural rules regarding admission of relevant evidence by prescribing a mechanism to test the relevancy of the proffered evidence, and thus do not unduly restrict a defendant's substantive confrontational right. Here, appellant was not prevented from cross-examining the complainant as to any material fact or element of the alleged offense. The presence or absence of motile sperm did not negate the occurrence of the rape. No witness, including the defendant, expressed any doubt that the complainant was in fact sexually assaulted at gunpoint. Likewise, while the excluded evidence may have had some limited relevance to the complainant's credibility, appellant failed to show a reasonable basis for believing her past conduct was pertinent. Absent such a showing, questions or testimony regarding past sexual conduct are properly excluded. *Allen*, supra. We cannot say that the trial court erred in refusing the proffered evidence concerning ejaculation and sperm motility, or the victim's prior sexual act occurring some 48 hours before the instant offense.

The judgment of the Court of Appeals is reversed and appellant's conviction in this cause is affirmed.

CLINTON, J., agreeing substantially with the court of appeals, dissents.

TEAGUE, J., dissents.