IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-307-CR




SANFORD HOOD,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 104,494, HONORABLE JON N. WISSER, JUDGE PRESIDING


 





 Appellant Sanford Hood was convicted of aggravated sexual assault of a child under
the age of fourteen years. Tex. Penal Code Ann. § 22.021(a)(1)(A)(i)(B) (West 1989). After the
jury found appellant guilty, the trial court assessed punishment at fifty years' imprisonment.

 Six points of error are advanced. In the first three points of error, appellant
contends that the trial court erred in excluding evidence that the twelve-year-old complainant,
subsequent to the alleged offense, had requested and was given a prescription for birth control
pills, and had indicated that she was sexually active between February 13 and 26, 1990. 
Appellant urges that he was denied cross-examination of the complainant as to this latter matter. 
In his fourth point of error, appellant asserts that the trial court erred in excluding evidence that
the complainant claimed that before the date of the alleged offense, she had become pregnant as
a result of sexual intercourse with appellant. The fifth point of error advances the contention that
the trial court erred in admitting evidence of the "so-called sexual abuse syndrome." Lastly,
appellant claims that the trial court erred in denying appellant access to a tape-recorded interview
of the complainant for the purpose of cross-examination. We will affirm the conviction.

 The sufficiency of the evidence to sustain the conviction is not challenged. A brief
recitation of the facts will place the points of error in proper prospective. The complainant, L 
 D , was twelve years and eight months old on January 2, 1990, when she testified that the
alleged offense occurred. Appellant was forty-six years old when, in addition to other acts alleged
in the indictment, he had vaginal and anal intercourse with L D . During much of 1988
and 1989, L D and her two sisters and a brother lived with their maternal grandmother,
Jean Jones, and the grandmother's "boyfriend," Charles Hood, appellant's younger brother. The
home was in Manor. L D 's mother lived there part of the time in question.

 L D met appellant sometime in 1988 when he brought Charles home from
work. Appellant owned a plumbing business and his brother worked for him. In 1989, appellant
began dating Rhonda, L D 's mother, and about the same time he also began dating Minnie
Horton. Appellant was separated from his wife, Lavoyne, a distant cousin and a close friend of
Jean Jones. While Rhonda was dating appellant, she and her children often spent the night at
appellant's house at 1038 Clayton Lane in Austin. Appellant took the children to the movies,
skating, and attempted to teach them to drive an automobile. After Rhonda quit dating appellant,
the children, including L D , continued to make weekend visits to appellant's house.

 In the summer of 1989, Rhonda married Eddie Humphries. In November 1989,
appellant returned to his wife. Minnie Horton moved into the house at 1038 Clayton. After
Thanksgiving 1989, L D and her siblings ran away from their mother's home and began
living again with their grandmother, Jean Jones, in Manor. According to L D , in 1988
or 1989, she began to have secret meetings with appellant. Sometimes, appellant would pick her
up several blocks away from her grandmother's house and they would go to 1038 Clayton Lane. 
L D related that appellant met her on January 2, 1990, about 4:00 p.m., and drove to the
Clayton Lane house where the alleged offense occurred.

 Jean Jones testified that about 7:15 a.m. on January 22nd, she received a telephone
call from Lavoyne Hood. As a result, she confronted L D and inquired why L D 
 had called appellant's house earlier that morning. L D eventually responded that she had
called appellant so they could "go and have sex." When asked about January 2, 1990, L D 
 told her grandmother that she and appellant had gone "to Minnie's house" to have sex. The
police were contacted.

 On January 23, 1990, L D gave a written statement to the police, who
referred her to the Planned Parenthood offices for a medical examination. On the same date, Dr.
Roberta Braun conducted a pelvic examination of L D at the Planned Parenthood facilities. 
The examination was "compatible with someone who had been sexually active." A PAP smear
also revealed the presence of trichomonas which is "considered a sexually transmitted disease." 
L D testified that appellant and George Jackson were the only individuals with whom she
had been sexually active, and she had been with Jackson only once.

 Appellant denied the offense alleged in the indictment. He testified that he had
worked on January 2, 1990, digging a sewer line at 1611 Berene Street in Austin, and that he did
not complete the job until 5:00 or 5:30 p.m. that day. Appellant introduced two invoices showing
his purchase of materials on January 2, 1990. Minnie Horton testified that she did not work on
January 2, 1990, and that she was home at 1038 Clayton Lane all day. She denied that appellant
or L D were at her house on that day.

 In his first point of error, appellant urges that the trial court erred in excluding
evidence that on L D 's initial visit to the offices of Planned Parenthood she had requested
and was given a prescription for birth control pills by Dr. Braun. In perfecting his bill of
exception, appellant established, out of the jury's presence, the request and the execution of the
prescription. Dr. Braun stated that L D indicated she was contemplating future sexual
activity with a thirteen- or fourteen-year-old boy. L D did not indicate to the doctor that
she had already had sex with the boy. The trial court sustained the State's objection on the basis
of Rule 412. Tex. R. Crim. Evid. 412. This rule provides in pertinent part:



(b) In a prosecution for sexual assault or aggravated sexual assault, or attempt
to commit sexual assault or aggravated sexual assault, evidence of specific
instances of an alleged victim's past sexual behavior is also not admissible,
unless:


 (1) such evidence is admitted in accordance with paragraphs (c) and (d) of
this rule;


 (2) it is evidence (A) that is necessary to rebut or explain scientific or
medical evidence offered by the state; (B) of past sexual behavior with
the accused and is offered by the accused upon the issue of whether the
alleged victim consented to the sexual behavior which is the basis of
the offense charged; (C) that related to the motive or bias of the alleged
victim; (D) is admissible under rule 609; or (E) that is constitutionally
required to be admitted; and


 (3) its probative value outweighs the danger of unfair prejudice.



Tex. R. Crim. Evid. 412(b).

 In his brief, appellant urges that the post-offense request for and the giving of a
prescription for birth control pills were admissible under exceptions to rule 412(b). He contends
that this testimony was admissible (1) to rebut or explain the medical examination offered by the
State and (2) because it related to the motive or bias of L D . Tex. R. Crim. Evid.
412(b)(2)(A) & (C). When this testimony was proffered by appellant, he did not urge its
admission on this basis. When it was excluded by the trial court, appellant did not object that the
testimony was admissible as exceptions to rule 412(b). See Tex. R. App. P. 52(a). When trial
objections do not comport with the complaints on appeal, nothing is presented for review. Fuller
v. State, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992); Johnson v. State, 803 S.W.2d 272, 292
(Tex. Crim. App. 1990), cert. denied, 111 S. Ct. 2914 (1991). An objection stating one legal
basis may not be used to support a different legal theory on appeal. Rezac v. State, 782 S.W.2d
869, 870 (Tex. Crim. App. 1990).

 Even if this were not true, appellant now merely asserts these exceptions to the rule
and does not brief the contention in accordance with Rule 74(f). See Tex. R. App. P. 74(f). We
also fail to see how the excluded testimony constitutes a specific instance of past sexual behavior
as contemplated by Rule 412. If it does, then it does not rebut or explain the medical evidence
offered by the State or show the motive or bias of L D . Error may not be predicated upon
a ruling which excludes evidence unless a substantial right of the party is affected. Tex. R. Crim.
Evid. 103(a). Point of error one is overruled.

 In his second and third points of error, appellant urges that the trial court erred in
excluding evidence and denying him the right to cross-examine L D about statements she
made during a visit to the Planned Parenthood offices that she had been "sexually active" between
February 13 and February 26, 1990. It appears that after L D 's initial visit to the Planned
Parenthood offices on January 23, there were subsequent visits on February 7, 13, and 26, 1990. 
On these latter visits, she was asked whether she was "currently sexually active." On February
7 and 13, L D responded in the negative. On February 26, she gave an affirmative answer
and stated that she used foam as a contraceptive. The trial court expressly excluded the evidence
under Rule 412(b). Assuming that appellant offered the evidence or timely objected to the
exclusion of the evidence on the basis of Rule 412(b)(2)(A), (C), we do not find that L D 
's statement that she had been sexually active between February 13 and 26 rebutted or explained
the medical evidence of a previous pelvic examination on January 23, or showed bias or prejudice.

 The right of cross-examination is secured to the defendant in a criminal case by the
federal and state constitutional guarantees of an accused's right to confront the witnesses against
him. 24 Tex. Jur. 3d, Criminal Law § 3293 at 696 (1982). The Sixth Amendment's right of
confrontation and cross-examination is a fundamental right and is applicable to the states by virtue
of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965); Shelby v. State, 819
S.W.2d 544, 546 (Tex. Crim. App. 1991). The confrontation clause of the Sixth Amendment
does not, however, prevent the trial court from imposing reasonable limits on the right of cross-examination. On the contrary, trial courts retain a wide latitude insofar as the confrontation clause
is concerned to impose reasonable limits on cross-examination, based on concerns about, among
other things, harassment, prejudice, confusion of issues, the witness's safety or interrogation that
is repetitive or only marginally relevant. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986);
Ramos v. State, 819 S.W.2d 939, 941 (Tex. App.--Corpus Christi 1991, pet. ref'd). "[T]he
confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." 
Delaware v. Fenstorer, 474 U.S. 15, 20 (1985). Thus, the confrontation clause is not a talisman
justifying forays into matters that are collateral to the issues at trial. See Gutierrez v. State, 764
S.W.2d 796, 799 (Tex. Crim. App. 1989); Chipman v. Mercer, 628 F.2d 528, 531 (9th Cir.
1980).

 A defendant is entitled to a fair opportunity to cross-examine a State's witness. 
However, cross-examination must comply with the rules of evidence and its scope lies within the
sound discretion of the trial court. Wright v. State, 491 S.W.2d 936, 939 (Tex. Crim. App.
1973); Burrough v. State, 672 S.W.2d 860, 871 (Tex. App.--Corpus Christi 1984, no pet.);
Morgan v. State, 644 S.W.2d 766, 772 (Tex. App.--Dallas 1982, no pet.); see also Tucker v.
State, 771 S.W.2d 523, 531-32 (Tex. Crim. App. 1988). In the instant case, the trial court
restricted the cross-examination of L D only to the extent of non-compliance with the rules
of evidence.

 Great latitude, of course, should be allowed the accused in showing any fact which
would tend to establish ill feeling, bias, motive, and animus upon the part of any witness testifying
against him. Hurd v. State, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987); Koehler v. State, 679
S.W.2d 6, 9 (Tex. Crim. App. 1984). The right of confrontation, however, does not prevent the
trial court from imposing some limits on cross-examination into the bias of a witness. Hurd, 725
S.W.2d at 252. The trial court retains some discretion in deciding how and when bias may be
proved, and what collateral evidence is admissible for that purpose. Green v. State, 676 S.W.2d
359, 363 (Tex. Crim. App. 1984). Texas courts have been reluctant to find prior sexual history
evidence to be material. Boyle v. State, 829 S.W.2d 122, 128 (Tex. Crim. App. 1989). 
Generally, the application of rape shield laws do not unduly restrict an accused's substantive rights
of confrontation. Pinson v. State, 778 S.W.2d 91, 95 (Tex. Crim. App. 1989); Allen v. State,
700 S.W.2d 924, 930 (Tex. Crim. App. 1985).

 In the instant case, the trial court applied the two-part test for the admissibility of
past sexual behavior. Boyle, 820 S.W.2d at 148. Moreover, appellant has failed to show a
reasonable basis for believing that L D 's statement of sexual activity between February
13 and 26 was pertinent. Absent such a showing, questions or testimony regarding the statement
were properly excluded. Appellant was not denied his right to cross-examination under either the
federal or state constitutions. (1) Points of error two and three are overruled.

 In point of error four, appellant contends that the trial court erred by excluding
evidence that the complainant claimed that she had been pregnant as a result of sexual intercourse
with appellant prior to the date of the alleged offense. Appellant urges that the claim was a false
prior accusation which rendered the evidence admissible. The State argues that the complainant's
assertion was a disclosure, not an accusation, false or otherwise, and that the evidence was
inadmissible.

 Appellant appears to rely on the proposition that if the evidence shows that a
complainant has previously made false accusations of sexual misconduct the trial court errs in
excluding such testimony (assuming the proper predicates have been established). This is so even
though specific acts of misconduct are generally inadmissible for impeachment purposes. See
Giles v. Maryland, 386 U.S. 66, 75-76 (1967); Rushton v. State, 695 S.W.2d 591, 594 (Tex.
App.--Corpus Christi 1985, pet. ref'd).

 In March of 1990, L D was interviewed by Sally Williams, a counselor with
the district attorney's office. L D stated that sometime in 1988 or 1989 she became
pregnant by appellant, the only man with whom she had had sex at the time. (2)
 Her pregnancy was
verified by a "home pregnancy kit" purchased by appellant. Minnie Horton, one of appellant's
girlfriends, took L D to Brackenridge Hospital where a doctor confirmed her pregnancy. 
Later, appellant took her to a place "near Seton Hospital" where a lady in a white coat told L 
 D she was pregnant. L D related that she subsequently had a miscarriage at
appellant's house after a fall. Appellant cleaned up the blood clots and discharge. Williams's
notes were made available to appellant before trial.

 In a hearing outside the jury's presence, appellant's counsel interrogated L      D    
about her interview with Williams and then sought to have that testimony produced before the
jury. Appellant's counsel claimed that the statements were false because it would be shown that
appellant had been sterile most of his life and that he could not have caused the pregnancy. No
proof of sterility was offered at the time. When questioned by the trial court, appellant's counsel
agreed that the defense theory was to show that L D was sexually active with one other
person and the motive for the accusation against appellant was to cover up activity with a third
person. The prosecutor objected to the admission on the basis of Rule 412(b). The objection was
sustained.

 Subsequently, before the jury, appellant testified that he was sterile, that he had no
children though married twice, and that his wives had had children by other husbands. In the
absence of the jury, appellant related that in 1977 he had been tested by an unidentified doctor
who had informed him that he had a low sperm count. He had not been tested again. Thereafter,
appellant reoffered L D 's testimony claiming a false prior accusation. The trial court
sustained the State's objection based on Rules 412(b) and 608(b). Tex. R. Crim. Evid. 412(b),
608(b). (3)

 Even if rules prohibiting the admission of specific acts of misconduct for
impeachment must give way to evidence of a previous false accusation of sexual misconduct,
Giles, 386 U.S. at 75-76, appellant has failed to establish the falsity of L    D    's assertion that
she had been impregnated by appellant. See Rushton, 695 S.W.2d at 594. This fact distinguishes
the instant case from those cited by appellant. See Beckley v. State, 827 S.W.2d 74, 76-77 (Tex.
App.--Fort Worth 1992, no pet.); Polvado v. State, 689 S.W.2d 945, 949-50 (Tex. App.--Houston
[1st Dist.] 1985, pet. ref'd); Thomas v. State, 669 S.W.2d 420, 421-23 (Tex. App.--Houston [1st
Dist.] 1984, pet. ref'd). Moreover, the issue of consent is clearly irrelevant to a prosecution
under section 22.011(a)(2) of the Penal Code. Hernandez v. State, 861 S.W.2d 908, 909 (Tex.
Crim. App. 1993).

 Error may not be predicated upon a ruling excluding evidence unless a substantial
right of the party is affected. Tex. R. Crim. Evid. 103(a). A trial court has broad discretion to
admit or exclude evidence. That decision will not be overturned on appeal absent a showing of
an abuse of discretion. See Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). 
Point of error four is overruled.

 In his fifth point of error, appellant contends that the trial court erred by admitting
evidence of the "so-called child sexual abuse syndrome." Nancy Joe Bergeron, a counselor with
the Rio Grande Counseling Center for two years, testified that she had a degree in Child
Development and Family Living and a master's degree in Guidance and Counseling. She had
counseled seventy children, fifty-five of whom had been sexually abused. During counseling
sessions with L D , Bergeron found L D depressed, with feelings of guilt and fear,
and observed that L D displayed anger in talking about certain subjects. She described
these behavioral characteristics as being common among sexually abused children.

 Appellant objected to this testimony before it was offered on the grounds that the
witness was not sufficiently qualified to give such testimony; that the evidence was not relevant,
and that, if it was, the probative value of the evidence was substantially outweighed by its
prejudicial effect; and that the evidence was not of a specialized nature as to assist the jury in
understanding the evidence or any issue of fact in the case. The decision whether to allow the
testimony of an expert witness under Rule 702 is within the sound discretion of the trial court. 
Duckett v. State, 797 S.W.2d 906, 910 (Tex. Crim. App. 1990), overruled on other grounds,
Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); Tex. R. Crim. Evid. 702. The
trial court's decision shall not be overturned except upon a showing of an abuse of that discretion. 
Amos v. State, 819 S.W.2d 156, 163 (Tex. Crim. App. 1991), cert. denied, 112 S. Ct. 1959
(1992); McIntosh v. State, 855 S.W.2d 753, 767 (Tex. App.--Dallas 1993, pet. ref'd).

 Other than to assert that Bergeron did not have the same qualifications as the expert
witness in Duckett, appellant has not briefed the complaint that Bergeron was not qualified as a
witness. See Tex. R. App. P. 74(b). The trial court has the discretion to determine whether a
witness offered as an expert possesses the requisite qualifications. Steve v. State, 614 S.W.2d
137, 139 (Tex. Crim. App. 1981). The special knowledge that qualifies a witness to give an
expert opinion may be achieved through a study of technical works, through specialized education
and practical experience, or through a combination of these means. Holloway v. State, 613
S.W.2d 497, 501 (Tex. Crim. App. 1981); Trevino v. State, 783 S.W.2d 731, 733 (Tex.
App.--San Antonio 1989, no pet.). In addition to her degrees, her experience, and the number of
sexually abused children she counseled, Bergeron, a former pre-school teacher, continued to
attend numerous seminars and do extensive reading in the field of child sexual abuse. The record
supports the trial court's implicit determination that Bergeron possessed sufficient qualifications. 
Steve, 614 S.W.2d at 139; Trevino, 783 S.W.2d at 733-34.

 Appellant complains that the proffered expert testimony was not shown to be of
such a specialized nature that it would help the jury to understand the evidence or a fact in issue
in this case. Appellant has not specifically briefed this contention. See Tex. R. App. P. 74(f);
Pierce v. State, 777 S.W.2d 399, 418 (Tex. Crim. App. 1989). Bergeron testified as to what
specific behavioral characteristics are common among sexually abused children. This is not a
matter of common knowledge. See Duckett, 797 S.W.2d at 917. Appellant's contention is
without merit.

 Appellant principally relies upon Duckett to sustain his point of error. He argues
under Duckett that the expert testimony is not admissible as substantive evidence, and becomes
admissible only where the child witness has been effectively impeached on matters concerning the
circumstances of the alleged offense, and the proffered testimony specifically relates to the very
matters upon which the witness was impeached. To the extent that Duckett may be so read, it has
now been disapproved. Cohn, 849 S.W.2d at 819. Point of error five is overruled.

 Lastly, appellant complains that the trial court erred in denying him access to a
tape-recorded interview of the complainant. After L D testified on direct examination,
appellant, upon request, was furnished the written statements of the witness given on January 23,
1990, for the purposes of cross-examination and possible impeachment. The written notes of
counselor Bergeron were also given to appellant. Later, during the trial, the prosecutor informed
the trial court of a taped interview with L D . After an in camera inspection of the tape,
the trial court denied appellant's request for production and inspection of the tape.

 Appellant asks this Court to review the tape recording to determine whether it
contains any matter which is (1) inconsistent with L D 's testimony, (2) consistent with
appellant's defenses, or (3) favorable to appellant on the issue of guilt or innocence. Appellant
urges us to follow the procedure articulated in Cullen v. State, 719 S.W.2d 195 (Tex. Crim. App.
1986). Cullen did extend the Gaskin rule (4) to cover tape-recorded statements of a witness. Id. at
197; Menke v. State, 740 S.W.2d 861, 866 (Tex. App.--Houston [14th Dist.] 1987), cert. denied,
490 U.S. 1067 (1989). The Gaskin rule under which Cullen was decided has been subsumed by
Rule 614 of the Texas Rules of Criminal Evidence. See Washington v. State, 856 S.W.2d 184,
188 n.4 (Tex. Crim. App. 1993). Rule 614 has expanded the Gaskin rule. 1 Steven Goode, Olin
Guy Wellborn III, and M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and
Criminal § 615.1 at 665-66 (Texas Practice, 2d ed. 1993) (hereinafter Goode). Tape-recorded
statements are expressly within the scope of the rule. See Tex. R. Crim. Evid. 614(f)(2).

 When interpreting Rule 614, it is appropriate to look to the prior interpretation of
the Gaskin rule. Jenkins v. State, No. 71,040, slip op. 7 (Tex. Crim. App. May 5, 1993)
(rehearing pending). The rule is more of a discovery rule than a rule of evidence. Goode,
§ 615.1 at 665. In the instant case, the State takes the position that the taped interview was the
work-product of the prosecution and it was not required to produce the taped statement. See Tex.
Code Crim. Proc. Ann. art. 39.14 (West 1979).

 In Cullen, the Court of Criminal Appeals examined the scope of the work-product
rule in determining whether the recording of interviews with witnesses are discoverable. 719
S.W.2d at 198; see also Washington, 856 S.W.2d at 188. At one extreme, a recording of a
statement made by a witness without any questions by the interviewer is clearly discoverable. At
the other extreme, a recording is not discoverable if it contains only comments by the attorney
concerning his trial strategy or opinions of the strengths and weaknesses of the case. If the
recording falls within the two extremes, the trial court must examine it in camera, decide which
portions are discoverable, and order a copy of the tape containing those portions to be delivered
to the party requesting it. Washington, 856 S.W.2d at 198.

 In the instant case, the trial court made an in camera inspection of the tape after
the request for production, the objections and ensuing argument. The trial court refused the
request for production and had the entire tape made a part of the appellate record. Our
examination of the tape reflects that the recording was protected work-product. Part of the tape
involves the prosecutor instructing the witness to tell the truth at trial, to be sure of her answers
to questions, and not to guess. Other like instructions followed. The balance of the tape dealt
with questions by the prosecutor or counselor Williams propounded to the witness. The taped
interview was the apparent disclosure by L D to the prosecutor that she had been
impregnated by appellant at a date earlier than that of the alleged offense. The questions
principally concerned the pregnancy tests, the witness's fall, and the subsequent miscarriage. The
tape was clearly not a recording of a statement made by a witness without questions by the
interviewer. The trial court did not err in refusing the request for production. Id. at 190.

 If it can be argued that the tape-recorded statement was producible under Rule 614,
we conclude that any error in the trial court's action was harmless, even if it can be said that the
recorded statement related to the subject matter concerning which the witness testified. Tex. R.
Crim. Evid. 614(a). The test for harmfulness of any error under Rule 614 is whether the
defendant was denied effective cross-examination and possible impeachment of the witness. 
Jenkins, No. 71, 040, slip op. at 12; see also Cullen, 719 S.W.2d at 196-98; Mayfield v. State,
758 S.W.2d 371, 375 (Tex. App.--Amarillo 1988, no pet.). There was no material inconsistency
between L D 's testimony and her recorded statements. There was no value in the
recording for purposes of impeachment, and this was particularly true in light of the trial court's
decision, upon appellant's original request, to exclude evidence of extraneous sexual conduct
between appellant and L D . There was nothing in the tape recording consistent with
appellant's defense or favorable to him on the issue of guilt or innocence.

 Sally Williams, a counselor with the prosecutor's office, was present during the
taped interview. As noted in the discussion of point of error four, her notes were made available
to appellant before the trial commenced. Appellant's counsel was afforded a pre-trial opportunity
to interview the complainant, and before the conclusion of the guilt/innocence stage of the trial,
the prosecutor's notes of the taped interview were made available to appellant. (5) Appellant was
not denied effective cross-examination or possible impeachment of the witness. Point of error six
is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice (6)

Before Justices Jones, Kidd and Onion*

Affirmed

Filed: June 15, 1994

Do Not Publish






* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   Appellant has not cited and we have not found any judicial decision construing the state
constitutional provision as imposing a greater level of protection than the federal standard
discussed. Appellant has not presented any compelling argument for such action on our part,
and we do not perceive any justification for doing so in the instant case. See Gonzales v.
State, 818 S.W.2d 756, 764 (Tex. Crim. App. 1991); DeFreece v. State, 829 S.W.2d 251, 256
n.3 (Tex. App.--El Paso 1992), rev'd on other ground, 848 S.W.2d 150 (Tex. Crim. App. 1993).
2.   L D stated her single sexual encounter with George Jackson occurred after her
pregnancy and subsequent miscarriage. She related that appellant and Jackson were the only men
with whom she had sex.

3.   Tex. R. Crim. Evid. 608(b) provides:


(b) Specific instances of conduct. Specific instances of the conduct of a witness,
for the purposes of attacking or supporting his credibility, other than
conviction of crime as provided in Rule 609, may not be inquired into on
cross-examination of the witness nor proved by extrinsic evidence.
4.   Gaskin v. State, 353 S.W.2d 467 (Tex. Crim. App. 1967).
5.   Notes by the interviewer or other persons are, of course, not the same as the written
or taped statement of a witness for the purpose of cross-examination and possible
impeachment.
6.   The indictment alleged three prior felony convictions for enhancement of punishment. 
The trial court apparently chose not to utilize these convictions in assessing punishment in
this 1992 trial. At the penalty stage of the trial, appellant's counsel objected that the copy
of a 1964 judgment of conviction from Bexar County furnished to him by the State did not
contain the signature "of Judge John F. Onion, Jr., of course, who is long since deceased, on
that judgment." (emphasis supplied). To borrow from Mark Twain, reports of my death have
been "greatly exaggerated."